UNITED STATES *v.* JOLLY, (two cases.)

(*District Court, W. D. Tennessee.* November 15, 1888.)

1. FORGERY—OBLIGATION OF UNITED STATES—INDICTMENT—ALLEGATION OF INTENT.
    If the indictment be for falsely making and forging an obligation of the United States, it is sufficient to aver in the general language of the statute an intent to defraud, and the name of any person sought to be defrauded need not be mentioned, nor is any more specific averment necessary, such as might be required if the offense charged were that of passing or attempting to pass, uttering or publishing the forged security. Guilty knowledge, and an intention to defraud the United States, if no one else, are necessarily implied from the language of the Revised Statutes, § 5414, describing the offense.

2. SAME—WHAT CONSTITUTES—INDORSEMENT OF POST-OFFICE WARRANT.
    It is an offense against the United States, and forgery, under Rev. St. § 5414, to falsely and fraudulently write the name of the payee upon the back of a post-office warrant upon the treasury of the United States, such indorsement being in a legal sense a part of the instrument itself.

3. POST-OFFICE—LARCENY FROM THE MAILS—PLEADING AND PROOF.
    The offenses denounced by Rev. St. §§ 5469, 5470, are not confined to the larceny of articles from the mails, or receiving articles stolen therefrom, and it is not essential to aver or prove all the ingredients of that offense to sustain the indictment. Any taking or abstracting the articles, or receiving them, when so taken, with the object described in the statute to "open," "secrete," "destroy," "embezzle," or "steal," is within the statute.

4. INDICTMENT AND INFORMATION—REFERRING ONE COUNT TO ANOTHER.
    It is not good pleading to refer to a former count in aid of the averments of another, but it is a matter of form only, and cured by section 1025 of the Revised Statutes.

Indictments for Forgery, and for abstracting and embezzling a letter from the mails. On motion to quash.

*H. W. McCorry,* U. S. Dist. Atty.

*W. W. Murray* and *E. L. Bullock,* for defendants.

HAMMOND, J. The indictment for forgery of the treasury warrant issued from the post-office department for transportation of the mails, and set out *in hæc verba,* avers that the defendant did, "with intent to defraud, falsely make and forge the name of 'Jas. J. Morgan' on the back of a warrant," etc., (describing it.) The warrant, as described, and as shown by its words, is one of the securities or obligations of the United States which section 5414 of the Revised Statutes of the United States was designed to protect against forgery, counterfeiting, or altering "with

intent to defraud," to use the language of the statute. Primarily, the implication is that the United States will be defrauded by such conduct; and the intent to defraud the United States is necessarily indicated by the statute by the very use of the words, "any obligation or security of the United States," and therefore it cannot be necessary to aver any specific intent to defraud the United States, or any other person who may be defrauded by the act complained of by the indictment. In an indictment for the common-law crime of forgery perhaps it might be necessary, in the absence of legislation changing the rule, to allege the name of some person intended to be defrauded, or that the name of that person was to the jurors unknown. Bish. Dir. & Forms, § 457. But our federal jurisprudence knows only statutory offenses as they are defined by acts of congress, and only a general intent to defraud is required or defined by this section of the Revised Statutes, which is intentionally so general as to protect all the securities of the United States, and a more specific intent to defraud particular persons other than those implied by the language used in describing the intent cannot be imported into the act of congress without usurping legislative functions.

In the case of *U. S.* v. *Carll*, 105 U. S. 611, the defect was that the indictment for "passing, uttering, and publishing" a forged obligation under Rev. St. § 5431, did not aver a guilty knowledge of the forgery by the defendant, wherefore the "intent to defraud" was not described sufficiently by using the language of the statute in that section, which is identically the same as that used in section 5414, which we are considering. But the difference in the character of the two offenses, in this regard, is quite obvious. One may pass a forged instrument innocently, because he does not know it to be forged, and believes it to be genuine; but one cannot innocently make or himself forge the instrument without guilty knowledge of the fact of the want of genuineness, if his intention be "to defraud," in the language of the statute. He might, without intention to defraud, make such an instrument, or counterfeit it by copying it or otherwise imitating it, idly, say, or for some lawful purpose; but it is entirely sufficient in and by the very language of the statute to negative that kind of innocent conduct by averring that the forgery was done with an intent to defraud. The difference is in the essential nature of the two offenses, and the case falls directly within the principle announced as an exception to the rule in the case of *U. S.* v. *Carll, supra:* "Unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." That is the case here. *U. S.* v. *Britton,* 107 U. S. 655, 661, 2 Sup. Ct. Rep. 512. Nor is this case like that of *Hooper* v. *State,* 8 Humph. 92, which was, again, an indictment for passing a counterfeit bank-note, where it was held that the indictment did not sufficiently charge the intent to defraud the person to whom the note was passed. That person might have known the note to be spurious, and so would not be defrauded, or some other circumstance might intervene to relieve the act of the fraudulent intention, which fact would be not at all inconsistent with the act of passing, where-

fore the indictment should allege the fraudulent intention specifically. But with the act of making or committing the forgery itself it is entirely different, as before pointed out. *U. S.* v. *Otey*, 31 Fed. Rep. 68. Meager as the indictment is, the objection that the intent to defraud is not more specifically set out by naming some person intended to be defrauded is not, therefore, well taken.

The next objection is that the indictment is only for the forgery of an *indorsement* upon the post-office warrant, which is not within the Revised Statutes, § 5414, but is at most only a common-law or state offense, of which this court has no jurisdiction. This is a very narrow view of the statute, and trims it to dimensions that would very materially impair its usefulness, and leave the obligations and securities of the United States at the mercy of forgers and counterfeiters. I do not comprehend why the name of the payee is not as much a part of the instrument as that of him who, in behalf of the United States, signs the warrant or check. It is conceded that it is so, as appearing on the face of the instrument, but it is denied that it is so when placed on the back of it, because, it is urged that it is then a mere private writing used for a purpose wholly independent of the warrant, and only to pass title to it; and that it is no more forgery than it would be to hand the warrant over to another, if it were payable to bearer, as it might be, and pass it by mere delivery. It was very nearly held in *U. S.* v. *Long*, 30 Fed. Rep. 678, that the mere impersonation of the payee would be forgery. Certainly it is, if, as in that case, the name of the payee was signed to the receipt upon the money-order by the person impersonating him, and that under a statute quite as general as this we are considering. So, too, in *Ex parte Hibbs*, 26 Fed. Rep. 421, 431, a postmaster who issued money-orders genuine in their form and substance to all intents and purposes, so far as these qualities related to his power to issue them, but designed to accomplish his fraudulent purpose of appropriating to himself, under that form of genuineness, the money belonging to the funds provided to pay money-orders, was held guilty of forgery under a statute quite as general as this. He made out the orders to a fictitious person, used the name of that fictitious person through a bank to collect the money, and it was forgery. It is obvious to the court that the principle of these cases is correct. The very fact that the warrant is made payable "to order," rather than "to bearer," when it would pass by delivery, like a bank-note, shows that the practice of so writing them is intended to bring the indorsement within the protection of the law against forgery. It constitutes about all the value there is in so writing them, and the writing the name of the payee falsely and fraudulently on the back is just as much a forgery of the instrument as any other false writing concerning it would be. It is in every legal sense a part of the instrument itself.

The other of these two indictments is drawn under Rev. St. §§ 5469, 5470, and charges in the first count that the defendant took from the mail, feloniously, the letter containing the above-mentioned warrant, and then and there opened and embezzled the said letter; and, in the second count, that he did feloniously "receive" the said check "set out by words

and figures in the first count of this indictment," well knowing the same to have been stolen or embezzled from the mail. It is objected that this indictment does not contain the necessary averments to constitute the crime of larceny or receiving goods stolen from the mails, inasmuch as it does not charge the technical larceny of the letter. If it was intended in *Jones* v. *U. S.*, 27 Fed. Rep. 447, to hold that these statutes or the similar one—Rev. St. § 5467—involved in that case provide only against the crime of larceny of the letters or packets described in the statute, I cannot agree to that ruling. It has been ruled in this court always that these statutes were not confined to a technical larceny from the mails, but also punished the simple taking to open, embezzle, or destroy, or the obtaining of a possession by fraud or deception, etc. Of course, a technical larceny would be included; but likewise acts and conduct not at all amounting to technical larceny are denounced by the statute, as it seems to me is plainly indicated by the language used, the general scope and the evident purpose of the statutes to protect the mails against all manner of pilfering or other wrong-doing by taking from them that which should be safely kept in them until delivery to the addressee. The mails would be disastrously plundered, and all idea of their sanctity gone, unless this be the proper construction. It was said in *U. S.* v. *Stone,* 8 Fed. Rep. 232, 247, that the word "steal" is not the technical word to describe the common-law crime of larceny. That word is not at all essential to describe that crime, and it is a mistake, in my judgment, to imply from its use only the technical offense of larceny. It is the common speech to describe that offense, no doubt, but not the technical words. To "feloniously take and carry away" are the technical words; the word "steal" having crept from common speech into statutes, decisions, and indictments, perhaps. I have not followed out this conception because it is not necessary to establish it here, since the statute uses the word "take," without the word "feloniously," and in altogether a different sense, in connection with "open," "secrete," "destroy," "obtain," etc., describing very clearly, to my mind, a class of acts wholly disconnected with larceny, and for the obvious purpose of the most complete protection of the mails from all kinds of interference and meddling with their contents, and are not at all confined to the punishment of larceny. This, it seems to me, must be so, and it is emasculating these statutes to imply that they punish larceny only, from the use of the word "steal."

The last objection is that the second count should be complete within itself, and should not refer to the other count in aid of its averments. That is undoubtedly the best form of good pleading. Whether a count drawn as this is could be sustained at common law is very doubtful. Perhaps it could not; and there seems to be authority both ways. But our Revised Statutes, § 1025, forbid us to quash the indictment for that defect of form, as I think this clearly is, and we must therefore amend it by overlooking the defect, and reading the averments as if the words of the first count referred to as describing the warrant were inserted in this second count itself. It is not a technical amendment, but amounts to the same thing. I wish to say, however, that the court cannot ap-

prove such pleading, and desires that it shall be abandoned.    The ordinary precedents, long established, should be adhered ·to as the safest, and affording no opportunity for objections like this.    Motion overruled.