MATTHEWS v. UNITED STATES.

SHELTON v. SAME.

(Circuit Court of Appeals, Eighth Circuit.   November 21, 1911.)

Nos. 3,423, 3,424.

1. Post Office (§ 49*)—Robbery of Mail—Evidence Considered.
   Evidence considered and *held* sufficient to sustain a conviction under Rev. St. § 5472 (U. S. Comp. St. 1901, p. 3694), for holding up a train and robbing the mail.
   [Ed. Note.—For other cases, see Post Office, Dec. Dig. § 49.*]

2. Criminal Law (§ 1159*)—Appeal and Error—Affirmance.
   It is not essential to an affirmance of a conviction for crime on appeal that the appellate judges should be satisfied of the defendant's guilt beyond a reasonable doubt, there being substantial evidence thereof.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. § 1159.*]

In Error to the District Court of the United States for the District of Nebraska.

Criminal prosecution by the United States against William Matthews, Jack Shelton, and others for robbery of the mail.   Judgment of conviction and said named defendants bring error.   Affirmed.

Harry B. Fleharty, for plaintiff in error Matthews.

W. F. Gurley (Gurley & Woodrough, on the brief), for plaintiff in error Shelton.

A. W. Lane, Asst. U. S. Atty. (F. S. Howell, U. S. Atty., on the brief), for the United States.

Before SANBORN and HOOK, Circuit Judges, and W. H. MUNGER, District Judge.

HOOK, Circuit Judge.   [1] Between 11 and 12 o'clock of the night of May 22, 1909, an east-bound train on the Union Pacific Railroad known as the "Overland Limited No. 2," carrying United States mail, was stopped in the outskirts of Omaha, Neb., at a place known as Mud Cut, by masked highwaymen.   The trainmen and postal clerks were put in fear of their lives by threats and display and discharge of firearms.   The highwaymen compelled the opening of the mail car, and took and carried away seven pouches and sacks containing valuable registered mail.   Section 5472, Rev. Stats. (U. S. Comp. St. 1901, p. 3694), provides that any one who robs a carrier, agent, or other person intrusted with the mail, of such mail, and in effecting the robbery wounds the custodian or puts his life in jeopardy by the use of dangerous weapons, shall be punished by imprisonment at hard labor for the term of his natural life.   Five men were apprehended, jointly indicted, tried and convicted of robbery of the mails as above defined in the statute and each was accordingly sentenced.   Omitting mention of various aliases the men were Donald W. Woods, Fred Torgenson, Frank Grigware, Jack Shelton, and William Matthews.   Shelton and Matthews prosecuted these writs of error.   Each says the evidence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was not sufficient in law for his conviction. No other question is presented.

It is contended by Shelton and Matthews that the evidence showed conclusively that but four men participated in the robbery, and since five were convicted that there must necessarily have been a miscarriage of justice. Supplementing this, it is urged that three of them, Woods, Torgenson, and Grigware, were fully identified, but that the evidence was insufficient to identify Shelton or Matthews as the fourth, or indeed, aside from the precise number engaged, to prove either of them guilty of the crime. It may be said at the outset that it was shown by overwhelming proof that Woods, Torgenson, and Grigware took leading parts in the robbery. The evidence as to Shelton and Matthews was not so direct and positive, but was in general of a more circumstantial character. Only that which tends to show their participation in the crime and that which is explanatory or helps to a better understanding of it need be reviewed here.

The train robbery was committed Saturday night, May 22, 1909. In January of that year and previously, Woods, Torgenson, Grigware, and Shelton were acquaintances if not associates in Spokane, Wash. Shelton had known Grigware a good many years. Matthews had lived in Buhl, Idaho. Early in 1909 Shelton was with Woods, Torgenson, and Grigware in Denver, Colo. While there a photograph was taken showing all four of them in an automobile with a woman with whom Shelton was intimate. Later the four men were in Hot Springs, Ark. The Denver woman corresponded with Shelton, Woods, and Torgenson while they were there. Early in April, 1909, Shelton, Woods, Torgenson, and Grigware appeared in Kansas City, Mo.; also Matthews. On April 3, 1909, Matthews, by the name of Marvin, ordered a suit of clothes of a tailor in Kansas City. Grigware was with him. The tailor, as was customary, put a marker in the coat showing his business card, the name of the customer and the date of the order. When Matthews was arrested in Idaho June 18, 1909, the marker had been removed. Save for a short absence all five of the men were frequently seen in Kansas City until about the middle of May, 1909. Singly and in parties of two, three, and four they visited women in rooming houses—Matthews with Woods and Grigware, Shelton with Woods, Torgenson, and Grigware, and Matthews with Woods, Torgenson, and Grigware. They do not appear to have had other companions. At various times when in Kansas City Shelton and Woods roomed together, as did Grigware and Torgenson, and Woods and Torgenson. They visited each other at their rooms; Matthews also visited them.

About a week before the robbery all five of them appeared in Omaha and the same association among themselves was maintained. On May 16th Matthews rented a room in Omaha and Woods soon afterwards joined him. They vacated it about 3 p. m. of Saturday, the 22d, the day of the robbery. On the same afternoon between 1 and 2 o'clock Matthews and Shelton rented a room, but Shelton did not remain long. On May 17th Torgenson and a young man who was not identified rented a room. The latter left on Monday the

24th, two days after the robbery. On the 25th Shelton joined Grigware in a room the latter had rented the day before. On the same day Woods went to room with Torgenson. There were other movements of their habitations. When Woods, Torgenson, and Grigware were arrested on the night of Thursday, May 27th, Shelton and Grigware were roommates, and Woods and Torgenson, while Matthews was by himself. All five of the men patronized the same restaurant, though they did not go or leave together.

About May 20th Shelton, Matthews, Torgenson, and Woods were seen near the Union Pacific Railroad about a mile west of Mud Cut where the train was stopped. On the afternoon of Saturday, May 22d, the day of the robbery, some of the defendants were seen at Fremont, Neb., 46 miles west of Omaha. During the afternoon of that day five west-bound trains on the Union Pacific Railroad ran out of Omaha to and through Fremont, their schedule time between the two cities being from 55 minutes to 1 hour and 40 minutes. Between 5 and 6 o'clock that evening Shelton went to the rear of a residence in Fremont, and asked for and obtained a drink of water. He then filled a vessel with water and took it to an open place some distance away near the railroad tracks where several other men were preparing their meal. In the morning of the same day Woods went to a bookstore in Fremont and bought maps of Nebraska and South Dakota. During the day Woods, Torgenson, and another man not fully identified were drinking in a saloon in that city. The barkeeper had met Woods before and so accosted him. Woods remembered their former meeting. About 9 o'clock that night Grigware asked the night ticket clerk at the Union Pacific depot in Fremont about east-bound "No. 2," the train which was afterwards stopped at Mud Cut. He went again and got a Union Pacific folder. No. 2 was due out of Fremont at 10:20 p. m. and at Omaha at 11:55. The proof was direct and clear that four of the defendants were at Fremont the afternoon just before the robbery. It may be said here that during the time their movements were traced, down to the time of the robbery the defendants did not appear to have followed or been engaged in any lawful occupation for their livelihood. There was an attempt to show that Shelton was working as a railroad ticket "scalper" in Kansas City, but the evidence was not persuasive. He himself said the only acquaintances he and his companions made in Kansas City "to amount to anything" were the women they met.

The engineer, fireman, a second fireman riding free on the engine, and seven postal clerks testified to the particulars of the robbery. As the train neared Mud Cut two of the masked highwaymen climbed over the tender into the cab, and at the point of revolvers compelled the engineer to stop the train, and then with the two firemen to dismount. They were met on the ground by a third similarly masked. A shot was fired through the window of the mail car. The car was opened under threats, and the postal clerks and the men from the engine were made to stand in line where they were searched for weapons. The conductor and a brakeman were driven back into the train by shots. The registered mail pouches and sacks were thrown out and carried under orders of the highwaymen several hundred feet

in advance of the train. As they passed the head of the engine a fourth man, also disguised, came around from the other side of the track and joined them. Woods, Torgenson, and Grigware were identified by the trainmen and postal clerks; and there was other satisfactory evidence of their participation. But the witnesses present did not clearly identify the fourth as being Shelton or Matthews, though he resembled Shelton in general appearance. None of these witnesses saw more than four·highwaymen at one time. We say "at one time" because one of the postal clerks said that when he first got out of the car he saw one there who was not Woods, Shelton, Grigware, or Torgenson, but did not see him after that. Again, as the train neared the scene of the robbery the engineer noticed a light burning ahead on top of the cut south of the railroad track. When the train reached the cut the light suddenly went out. On the following day, Sunday, May 23d, the remains of a fire were found upon the bank of the cut directly south of the place where the train was stopped. Charred but unconsumed parts of a Spokane newspaper of May 13, 1909, were found. It is not an unreasonable deduction that the light was designed as a signal of the place agreed on for the commission of the crime, and that if four of the highwaymen were in Fremont that afternoon the signal was given either by a fifth or by one of the four who were at Fremont and who returned for that purpose.

So far as appears, none of the defendants had rooms or lived in South Omaha which is a corporate municipality distinct from the city of Omaha. In South Omaha, several miles from Mud Cut, there is a building known as the "Brown Park Schoolhouse." The attic of the building is reached by a ladder equipped with rope and pulley for lowering and raising it again when not in use. During the week of May 22d the principal of the school saw Grigware pass the schoolhouse several times. Sometimes he was alone, at others with Shelton, Torgenson, or Woods. On one occasion Shelton and Matthews were with him. Sunday afternoon, May 23d, Shelton was seen with Woods, Torgenson, and Grigware in the vicinity of the schoolhouse. Monday morning, May 24th, a basement window of the schoolhouse was found to have been opened and cinders tracked in from the outside. As already noted, Grigware rented a room in Omaha on that day, and on Tuesday the 25th Shelton joined him. Thursday, May 27th, Shelton was seen with Woods and Torgenson in a saloon in Omaha. Thursday afternoon some schoolboys discovered hidden in a ravine or gulley across the street from the schoolhouse three pistols, two of which were automatics, a pistol holster, an electric flash light, a pair of black overalls, a soft black hat and two blue polka dot handkerchiefs with cartridges. Some of the highwaymen who held up the train were armed with automatic guns and had their faces masked with handkerchiefs of the kind found. A watch was kept on the ravine that night and Woods, Torgenson, Grigware, and another man were seen in the vicinity. Woods was arrested as he came out of the ravine. Shortly afterwards Torgenson and Grigware were arrested near by. The fourth man escaped. In the room occupied by Woods and Torgenson a copy of the photograph of the group taken in Denver was found, and the newspapers of Friday morning which chron-

icled the arrests contained an illustration of it. Grigware had assumed the name Gordon and was so referred to in the press accounts. Early that morning Shelton, who was then his roommate, hurriedly examined all Grigware's clothing and personal effects, and destroyed everything showing Grigware's true name or that he came from Spokane. The reason Shelton gave at the trial was that he wished to save Grigware's family the disgrace which would follow the discovery of his identity. He then packed his own effects in two grips, carried them to Matthews' room, and arranged with Matthews to express them to him at Denver under the name of J. C. Kelley. On that day or the next he went in a street car to the suburbs of Omaha, and then walked to a place where he took a railroad train for Lincoln, Neb. He purposely avoided the railroad stations in Omaha. At Lincoln he signed Grigware's name to a card, and posted it, requesting that mail for the latter be forwarded there from Omaha. Then he took a train for Denver, where on May 30th, the day of his arrival, he posted another card directing that Grigware's mail be forwarded from Lincoln. On the same day he went to the woman already referred to, and they destroyed her copy of the group photograph and all letters she had received from defendants since their departure from Denver some months before. She had received letters from Woods, Torgenson, and Shelton. On the same day Shelton, still assuming the name Kelley, and believing the authorities at Omaha would never learn that Gordon's name was Grigware, mailed a confidential letter to a relative of the latter at Spokane urging the raising of funds for his assistance. Shelton was arrested in Denver on the 1st or 2d day of June.

Matthews shipped Shelton's grips as arranged between them. They were found by the officers in Denver marked as belonging to J. C. Kelley. On Monday, May 31st, a letter from Matthews to Shelton, addressed as Kelley, was mailed from Minneapolis, Minn. Reading the letter in the light of what has already been mentioned, Matthews said he had sent the grips, that Shelton had better go to Spokane and see a relative of Grigware and get $500 to help Grigware "and the other parties also," and that he (Matthews) would give $500 and then they might "pull through O. K." June 18th Matthews, as G. W. Marvin, registered at a hotel in Buhl, Idaho. On the same day he was arrested in his room. On an open suit case before him was a revolver and some sheets of an unfinished letter in his handwriting. He was handcuffed by the officers and told to resume his seat, but he fell over on the suit case, put one of the sheets of the letter in his mouth and mutilated it so that when it was recovered it was unintelligible. The other sheets showed the letter was addressed to "Friend Jack," and the latter was directed to write him there in such a way that only Matthews would understand. Jack was the given name assumed by Shelton. His real name was probably Lawrence F. Golden.

[2] Though there was corroborative detail, the foregoing shows the principal facts of the case of the government against Shelton and Matthews. Aside from denials by Shelton and Grigware there was little to impair their probative force. Some testimony was given, not

much, that Shelton and Matthews were in Omaha the day of the robbery, too late to have participated, but it was the province of the jury to weigh and attribute such weight to it as they thought right. It is not the rule that to affirm a conviction for crime on appeal the appellate judges must themselves believe in the guilt of the accused beyond a reasonable doubt. We think it apparent that there was substantial evidence at the trial that both Shelton and Matthews were guilty, and that is sufficient here.

The judgment is affirmed.