HAYS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.    January 26, 1916.)

No. 4419.

1. CRIMINAL LAW ☞741(1)—TRIAL—JURY QUESTION.
Where there is substantial evidence to establish all the elements of the offense charged, verdict for accused cannot be directed on the theory that the evidence is insufficient to convince the jury of accused's guilt beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1705, 1713, 1727, 1728; Dec. Dig. ☞741(1).]

2. PROSTITUTION ☞1—WHITE SLAVES—APPLICABILITY OF ACT.
The White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [Comp. St. 1913, §§ 8812–8819]) applies to a prostitute who voluntarily consents to acts of illicit relation, as well as to a "white slave" in the restricted meaning of those words.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ☞1.]

3. CRIMINAL LAW ☞422(6)—TRIAL—EVIDENCE—INSTRUCTIONS.
In a prosecution against two for violating the White Slave Act, a statement in writing, made by one of those accused, was properly received, though made out of the presence of the other, where the jury were charged not to consider the statement as against that accused not making it, for it must be presumed that they followed the directions of the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 984; Dec. Dig. ☞422(6).]

4. CRIMINAL LAW ☞507(1)—WHITE SLAVES—"ACCOMPLICE."
In a prosecution for violating the White Slave Act, the woman transported is not an "accomplice."

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1082, 1084, 1087, 1091, 1095; Dec. Dig. ☞507(1).

For other definitions, see Words and Phrases, First and Second Series, Accomplice.]

5. CRIMINAL LAW ☞780(3)—TRIAL—INSTRUCTIONS—ACCOMPLICES.
In a prosecution for violating the White Slave Act, where the court charged that in considering the testimony of the woman the jury should take into consideration that she was implicated in the improper transaction, that is sufficient admonition as to her testimony, there being no precise formula which must be followed in the federal courts; the state statutes as to such matters not governing.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1861; Dec. Dig. ☞780(3).]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

L. T. Hays was convicted of violating the White Slave Traffic Act, and he brings error.    Affirmed.

Harry O. Glasser, of Enid, Okl., for plaintiff in error.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., and W. B. Herod, Asst. U. S. Atty., of Guthrie, Okl., on the brief), for the United States.

Before CARLAND, Circuit Judge, and AMIDON and VAN VAL- KENBURGH, District Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

AMIDON, District Judge. Plaintiff in error, Hays, was jointly indicted with one Lessie Jones, for violating the White Slave Traffic Act. The indictment contained two counts. The first charges the furnishing of transportation to a 17 year old girl to make a journey from Oklahoma City, Okl., to Wichita, Kan., for the purpose of illicit sexual relations with Hays. The second charges the persuading, inducing, and enticing of the girl to make the same journey for the same purpose. The defendants were convicted upon both counts. Hays alone brings error.

Lessie Jones is a mature woman and a confirmed prostitute. She and the girl in question were living together at the Regal Hotel in Oklahoma City, leading an illicit life. Miller, a business associate of Hays, was a "friend" of Lessie Jones, and had been visiting the hotel for two or three days in the early part of March, 1914. He stated to the girl that he had a friend whom he would like to have her meet. On Sunday Mr. Hays called at the hotel, and Miller introduced him to the girl. At this meeting it was proposed that the defendant Jones and the girl should come to Wichita, where Miller and Hays resided, the men to pay the expense of the journey, and to support the women, in consideration of illicit sexual life. The girl at first declined, but was finally persuaded to go. The men returned to Wichita, and a day or two later were followed by Lessie Jones, who promised the girl that she would get money from Hays to pay the expense of her coming. A few days thereafter she called the girl up on the long-distance phone, and stated that Hays refused to send her money, but was willing to supply her with a ticket, and directed her to call for it at the Santa Fé office, and come on a certain train. A telegram was also sent by Lessie Jones to the girl, as follows: "Go to Santa Fé for ticket. Come on seven-twenty sure." The ticket was paid for by Lessie Jones at the Santa Fé office in Wichita. The agent there wired the agent at Oklahoma City to furnish the girl, giving her name, the ticket. The girl, acting upon the telegraph and telephone messages, called at the Santa Fé office, received and receipted for the ticket, and traveled upon it to Wichita. All this documentary evidence from the railroad, telegraph, and telephone offices was introduced at the trial in support of the oral testimony. At Wichita Hays and Miller were waiting in the Santa Fé Station when the girl arrived. They kept a little in the background. Lessie Jones was also there, and met the girl, and took her to a restaurant for supper. She then conducted her to a hotel, where two rooms had been engaged previously. There they found Hays and Miller awaiting them. Hays occupied one room with the girl, and Miller the other with the defendant Jones. The next morning it was arranged between the four that the women should either engage a house or other rooms during the day, and that all four should meet at the post office at 6 o'clock in the evening, where the women were to notify the men of the location of the quarters selected. Rooms were engaged at a rooming house. The girl registered herself and Hays under the name of Mr. and Mrs. O. C. Russell, Kansas City. The defendant Jones registered herself and Miller under the name of Mr. Miller and wife, Kansas City. At 6 o'clock the women went to

the post office, and were soon met by the two men. The four took a short ride in an automobile, and then separated, the women going to their rooms. Later in the evening the two men came to the rooms for the night, Hays occupying one room with the girl, and Miller the other with the defendant Jones. During the next 10 days the parties spent four or five nights together in the same rooms. The men then stated that their wives were getting "wise," and that they could not come to the rooms any more. Evidence of the keeper of the rooming house and of the hotel was also introduced in corroboration of the testimony of the girl, who was the chief witness on behalf of the government. During the period of their illicit relations Hays paid the girl $2 on two different occasions, and $1 on another. The bills for the rooms were paid by the defendant Jones.

The only evidence that Hays paid for the ticket upon which the girl rode was the testimony of the girl as to the original agreement made at the Regal Hotel, and her statement as to the declarations of defendant Jones, in the conversation over the long-distance phone, that Hays furnished the money for the ticket. So far as there was direct evidence on the subject, the money was actually paid to the Santa Fé agent at Wichita, by the defendant Jones, and she carried on the communications with the girl which resulted in her making the trip to Wichita. The only other evidence on the subject is the illicit life of Hays with the girl which is so clearly established as not to be controverted in the argument in this court. No evidence was introduced by the defendants.

[1] At the conclusion of plaintiff's case a motion was made for a directed verdict, and its denial is one of the principal errors now relied on. While it is conceded that there is substantial evidence to establish all the elements of the offenses charged in the indictment, it is urged that such evidence is insufficient to convince the jury beyond a reasonable doubt. This assignment of error is without merit. Where there is substantial evidence tending to prove each element of the offense charged, the verdict of the jury is final. Whether the evidence is of sufficient probative force to convince the mind beyond a reasonable doubt is addressed solely to the judgment of the jury. The court can do no more than accurately state the rule of law. There is no way by which the doctrines of reasonable doubt and presumption of innocence can be properly used to create a new zone of error, or devolve upon appellate courts the duty to examine evidence and determine its probative force. Matthews v. United States, 192 Fed. 490, 113 C. C. A. 96; Stout v. United States, 227 Fed. 799, —— C. C. A. ——; Humes v. United States, 170 U. S. 210;[1] Burton v. United States, 202 U. S. 344, 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Matthews v. United States, 192 Fed. 490, 113 C. C. A. 96; Tapack v. United States, 220 Fed. 445, 137 C. C. A. 39; Ward v. State, 58 Neb. 719, 79 N. W. 725; People v. Cummings, 123 Cal. 269, 55 Pac. 898; People v. Houff, 120 Cal. 538, 52 Pac. 846, 65 Am. St. Rep. 201. There is nothing in the opinions in Vernon v. United States, 146 Fed. 123, 76 C. C. A. 547, and Union Pacific Coal Co. v. United States, 173 Fed. 737, 97 C. C. A. 578, to the contrary. The

[1] 18 Sup. Ct. 602, 42 L. Ed. 1011.

opinions in those cases expressly state that there is a lack of substantial evidence to support the material averments of the indictment. That was the basis of those decisions.

[2] It is next urged, but in a rather hesitating way, that the White Slave Act is confined to cases of white slavery. The Ninth Circuit in Diggs v. United States, 220 Fed. 545, 136 C. C. A. 147, held to the contrary. The implication of a similar holding is so strong in the recent decisions of the Supreme Court as to amount to a direct decision of the point. Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Athanasaw v. United States, 227 U. S. 326, 33 Sup. Ct. 285, 57 L. Ed. 528, Ann. Cas. 1913E, 911; United States v. Bitty, 208 U. S. 393, 28 Sup. Ct. 396, 52 L. Ed. 543. See, also, United States v. Flaspoller (D. C.) 205 Fed. 1006; Johnson v. United States, 215 Fed. 679, 131 C. C. A. 613, L. R. A. 1915A, 862. The only basis for such a construction of the act is the title given to it in the last section, and some language contained in the debates and reports. It is elementary, however, that the plain language of a statute cannot be controlled by such considerations, and, in our judgment, the language of the White Slave Act is so plain as to make the interpretation suggested seem purely fanciful.

[3] The defendant Lessie Jones made a statement in writing which tends to implicate the defendant Hays as well as herself. When this statement was offered in evidence, counsel representing Mr. Hays objected to its receipt upon the ground that he was not present, and could not be bound by it. The court promptly instructed the jury that the statement could not be considered as against the defendant Hays, and that it was received solely as bearing upon the question of the guilt of the defendant Jones. This matter was again fully explained to the jury in the charge. Counsel for Hays now urges that the statement must have been prejudicial to their client, and that the jury disregarded the plain and emphatic direction of the trial judge. We must assume, however, that the jury obeyed those instructions. Any other holding would make the practical administration of justice by means of a jury, impossible.

[4, 5] At the conclusion of the court's charge counsel for Mr. Hays made the following oral request:

"The defendant requests the court to instruct the jury that the girl, under the facts and circumstances, is an accomplice, and that it is a rule of law that before the jury can take the testimony of an accomplice, it must be corroborated by other testimony of other witnesses, or by facts and circumstances which will convince the jury beyond a reasonable doubt."

To that request the court responded as follows:

"That instruction is refused, I think it is entirely proper, however, for the court to say to the jury where a witness goes on the stand who is implicated in an improper transaction, and admits it, that that fact ought to be taken into consideration in passing on her testimony, and the jury should carefully scrutinize it with that in view, and give due consideration and weight to that occurrence in the evidence."

An exception was saved to this action of the court, and is now assigned as error.

The ruling was clearly right. The request as framed by counsel was improper upon two grounds: First, the girl was not an accomplice (United States v. Holte, 236 U. S. 140, 145, 35 Sup. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281; Diggs v. United States, 220 Fed. 545, 553, 136 C. C. A. 147); second, even if she were an accomplice, the request as framed states the requirements of corroboration much too strongly. The admonition given by the court adequately safeguarded defendant's rights. There is no precise formula which must be observed in the federal courts. They are not bound by state statutes on the subject. The admonition to be given is a matter of caution, and not a hard and fast rule of law. Hanley v. U. S., 123 Fed. 849, 59 C. C. A. 153. The language used may properly be varied to some extent according to the degree of criminality of the accomplice and the circumstances under which he testifies. Wigmore on Evidence, § 2057.

The judgment is affirmed.