LOOKER v. UNITED STATES. *

(Circuit Court of Appeals, Second Circuit. March 13, 1917.)

No. 15.

1. CRIMINAL LAW ☞1159(2)—REVIEW ON ERROR—SUFFICIENCY OF EVIDENCE.
It is not necessary, in order to uphold a jury's verdict of guilty upon an indictment, that the appellate court should be satisfied beyond a reasonable doubt of the guilt of the accused; but, where there is substantial evidence pointing to guilt, it is the reasonable doubt of the jury, and not that of the court, which is to be considered.
[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3075.]

2. POST OFFICE ☞49—USE OF MAILS TO DEFRAUD—CRIMINAL PROSECUTION—DEFENSES.
A conviction for using the mails to defraud in selling stock of a corporation is not necessarily unsupported by evidence because the corporation was legally organized and for a legitimate purpose.
[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86.]

3. CRIMINAL LAW ☞1169(5)—REVIEW ON ERROR—ADMISSION OF EVIDENCE—CURING ERROR BY STRIKING OUT.
It is only when evidence erroneously admitted in a criminal case is of such apparent weight and so prejudicial in effect that the judicial

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied.

warning against ·it seems light and unavailing by comparison that the error remains uncured by striking it out.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3141.]

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Pierre M. Looker. From a judgment of conviction, defendant brings error. Affirmed.

Looker was found guilty of a "scheme to defraud," toward the execution of which the mail was used; the indictment being under section 215 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1103 [Comp. St. 1913, § 10385]).

William J. Kearns, of Newark, N. J., and James A. Hamill, of Jersey City, N. J., for plaintiff in error.

H. Snowden Marshall, U. S. Atty., and John C. Knox, Asst. U. S. Atty., both of New York City.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. Although the indictment contained seven counts upon which the jury found Looker guilty, the variations between the counts being only in respect of the persons defrauded, and the letters mailed, a summary of one charge is sufficient for the purposes of this writ.

The charge was that Looker, with one McLaughlin (who died before trial), devised a scheme for obtaining money by false pretenses from divers persons, by means of selling the stock and debenture certificates of a corporation, hereinafter called the Monaton Company, and thereupon in furtherance thereof sent by mail copies of a resolution of the directors of the Monaton Company and circular letters to divers persons, naming them in the several counts.

The assignments of error are reducible to two heads: (1) That the evidence did not lawfully warrant conviction; (2) that the error in admitting certain evidence was not cured by subsequently striking it out.

[1] 1. While we are far from thinking that this case is near the line of doubt, it must be remembered that it is not necessary, in order to uphold a jury's verdict upon indictment, that the appellate or other court should be satisfied beyond a reasonable doubt of the guilt of the accused. Courts pass on the competency, relevancy, and materiality of the evidence, and are not required to leave to juries speculation on points of accusation, plainly opposed to the weight of unimpeached testimony. But, where there is substantial evidence pointing to guilt, it is the reasonable doubt of the jury, and not that of the court, which is to be considered. Matthews v. United States, 192 Fed. 490, 113 C. C. A. 96; Crumpton v. United States, 138 U. S. 361, 11 Sup. Ct. 355, 34 L. Ed. 958; Humes v. United States, 170 U. S. 210, 18 Sup. Ct. 602, 42 L. Ed. 1011.

[2] The evidence below fully showed that Monaton Company was a duly incorporated concern, having for its chartered purpose the acquisition of real property and the management thereof in such manner that from its gains it might pay dividends on preferred stock, 4 per

cent. on "profit-sharing premium certificates," and 6 per cent. on other "certificates," apparently of several kinds. The exact nature of the documents issued is not material, further than to point out that whatever value they possessed rested wholly on the Monaton's ability to get, keep, and profitably manage realty in New York City. So far as shown it operated nowhere else.

Generically this is a familiar business, and entirely lawful. But these assumptions do not render it impossible, nor even difficult, so falsely to represent the condition of an actual and lawful business as to render it a mere vehicle and excuse for fraud. Indeed, the most dangerous and reprehensible swindles usually consist in building a scheme of deception upon a foundation lawful per se. McConkey v. United States, 171 Fed. 829, 96 C. C. A. 501, and cases cited.

Monaton Company was organized in 1907, and Looker had nothing to do with it until some time later, when he left the employ of another realty enterprise, entered that of Monaton Company, and before the end of 1912 was its president. It is strongly urged upon us that defendant below left one lawful occupation to enter another, did so with a good reputation, got nothing out of the Monaton Company but a salary, larger to be sure than any theretofore received by him, but fully earned, and therefore (it is said) he could not be guilty of anything more heinous than hoping against hope that business would improve, and should not be condemned, even if continued hard times resulted in losses and foreclosures which finally swept away practically every vestige of Monaton Company's assets. Such arguments are most legitimate for the jury; our duty is but to ascertain whether evidence was submitted that would permit reasonable jurors to find, beyond reasonable doubt, that at the times complained of no sane and honest man could have believed to be true what (in effect) Looker said to the public about the worth of Monaton securities.

Many a man embarks with hope, if not confidence, upon a business voyage that goes awry; in the beginning he is honest and has no thought of wrongdoing; when trouble arises, temptation comes, and falsehoods often seem the only way to defer collapse. Just when the sanguine man becomes reckless, and the reckless one criminal, cannot be laid down as matter of law; if facts justify the inquiry, the answer is solely for the jury.

The facts in this case required the inquiry. The statement of assets and liabilities of Monaton Company, sent out as true on December 31, 1912, contained assertions as to value of its realty and other assets which would severely tax the kindest critic. Heavily incumbered real estate was published as worth 50 per cent. more than it had recently cost, and one piece of land, which alone represented 10 per cent. of the inflated total, had actually been conveyed (by deed absolute on its face) to a mortgagee, or party in his interest, nearly two months before date of statement, while several other lots were in process of foreclosure. It is noteworthy that Looker was no novice in New York realty dealing, and it was a fair question for the jury whether such a man did not violate that "right of open and fair dealing" which every customer for Monaton securities possessed (Wilson v. United States, 190 Fed. at

434, 111 C. C. A. 231), when he solicited them to invest in a company owning "judiciously selected income-producing real estate" "yielding a good income constantly." The foregoing is illustrative, not exhaustive; there is much of such evidence, and it required submission to the jury, and justified the verdict.

[3] 2. The second heading of error we notice, only to point out that what is complained of is often a question of degree. ' The objectionable nature of testimony is not always easily seen, and its admission is oftentimes sought to be justified by "promises to connect" and other excuses. It would be a serious misfortune if, when reflection perceives a mistake, it could not be corrected by "striking out," with proper instructions to the jury. This the law permits. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708. It is only when evidence unlawfully admitted is of such apparent weight, and so prejudicial in effect, that the judicial warning against it seems light and unavailing by comparison, that the error remains uncured. Throckmorton v. Holt, 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663; Armour & Co. v. Kollmeyer, 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (N. S.).1110.

In the present instance an expert accountant testified to his opinion, formed from the Monaton Company's books, that the corporation was, at a certain time, insolvent. This evidence the court subsequently struck out. Whether there was error in the original admission we do not decide; but that the evidence as given was of such serious character as to render it impossible, or even difficult, for the court to eradicate its influence, we do not believe, and think the contrary self-evident.

Let the judgment and sentence be affirmed.