## UNITED STATES v. NIX.

(District Court, S. D. California, S. D. November 4, 1925.)

No. 6254–B.

**1. Criminal law ⟪1001—Federal Probation Law contemplates close supervision of probationer and submission of systematic reports to court.**

Probation Law March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), contemplates close supervision of probationer and submission of systematic reports to court.

**2. Criminal law ⟪1001—Offenders and offenses to which Probation Law applies stated.**

Probation Law, March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), applies particularly to youthful and first offenders, offenders whose release on probation will not endanger public, and those whom it is reasonable to believe will make serious efforts to overcome abnormalities and defects, and largely to more or less minor offenses, or those induced by youth, inexperience, mental or physical abnormalities, ignorance, poverty, etc., but not, except in very rare cases, to hardened, habitual criminals, those who need to be restrained to protect themselves and society, or those of mature years, fair education, and broad experience, who have committed some very deliberate offense.

**3. Criminal law ⟪1001—Probation Law not substitute for motion for new trial, appeal, parole system, or executive commutation or pardon.**

Probation Law March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), is not substitute for motion for new trial, review on appeal for errors at trial, parole system, or executive's constitutional power of commutation or pardon.

**4. Post office ⟪50—When conduct of business through mail becomes criminal misuse of mails to defraud solely for jury, if facts justify inquiry.**

When conduct through mail of business, begun without thought of wrongdoing, becomes criminal misuse of mails in furtherance of scheme to defraud, within Criminal Code, § 215 (Comp. St. § 10385), is solely for jury, if facts justify inquiry.

**5. Criminal law ⟪1001—"Ends of justice" and "best interests of the public" require preservation of proper balance between public's and individual's rights in passing on application for probation.**

"Ends of justice," and hence "best interests of the public," within Probation Law March

4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), authorizing District Court to suspend sentence and place accused on probation, when such ends and interests will be served thereby, require preservation of proper balance between rights of all people to have laws enforced and constitutional rights of individual.

**6. Criminal law ⟪1001—Accused, not testifying at trial, cannot explain part in transaction on application for probation.**

Accused, who did not testify and explain his connection with charge during trial, cannot explain his part in transaction on application for probation.

**7. Criminal law ⟪1001—Avoidance of imprisonment for crime as brand of infamy not ground for probation.**

Imprisonment for crime, of which convicted by jury, is not brand of infamy, avoidance of which may be urged as ground for probation, under Probation Law, March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c); events after verdict of guilty making for redemption under theory of our laws, which must be assumed to be just.

**8. Criminal law ⟪1001—Recommendation of leniency by majority of jurors held not ground for probation.**

That 7 of 12 jurors who returned verdict of guilty in accordance with their authority and facts, recommended leniency toward accused, held not ground for probation, where court imposed sentence of only 2 years' imprisonment, covering all of number of counts, on each of which statute provided maximum penalty of 5 years' imprisonment.

**9. Criminal law ⟪1001—Application for probation denied, without prejudice to renewal after serving year of sentence, pursuant to Circuit Court of Appeals' opinion continuing control of judgment in District Court until satisfied.**

Application for probation by one in prime of life, of good average education, broad business experience, and normal mental equipment, who had led decent life before conviction of using mails to defraud, denied, without prejudice to renewal after serving year of sentence; effect of Circuit Court of Appeals' opinion, in reversing denial of prior application, that applicant might be heard under Probation Law March 4, 1925 (Comp. St. Supp. 1925, §§ 10564⅘–10564⅘c), passed after his conviction, being to continue control of judgment in District Court until satisfied.

Application by Wyatt L. Nix for probation. Application denied without prejudice.

Maurice R. Norcop, Sp. Asst. Atty. Gen., for the United States.

Raymond Benjamin, of San Francisco, Cal., for defendant.

HENNING, District Judge. This is an application for probation on behalf of the defendant. The defendant, with others, was charged with a violation of section 215 of the

Criminal Code (Comp. St. § 10385), by having operated a fraudulent scheme through the use of the mails. The trial was had before my predecessor in office, Hon. Benjamin F. Bledsoe.

The accused took an appeal from the judgment of conviction, but no reversal was had. U. S. v. Nix (C. C. A.) 4 F.(2d) 652. A petition for review was refused by the United States Supreme Court.

Pending this proceeding Congress passed the Act of March 4, 1925, known as the Probation Law (Comp. St. Supp. 1925, §§ 10564⅝–10564⅝c). After the remittitur had been filed, the defendant applied for the benefit of the Probation Act, and the court held that, the defendant having been tried and convicted and sentenced before the passage of the Probation Law, he could not receive its benefit. From that finding an appeal was taken to the Circuit Court of Appeals, which reversed the lower court, and held that one situated as was the defendant might be heard and have his matter considered under the Probation Law. In re Application of Wyatt L. Nix for a Writ of Mandamus, 7 F.(2d) 590, U. S. Circuit Court of Appeals, Ninth Circuit, No. 4601, opinion filed August 3, 1925.

The matter is now before me on the application for probation. The Probation Act was approved on the 3d day of March, 1925, one day before Congress adjourned sine die. Consequently it was impossible to secure appropriations for the proper operation of the system. This fact presents peculiar difficulties. The court is left without the necessary machinery for operating this statute. When the necessary appropriations are secured, it is proposed to appoint a chief probation officer for the purpose of organizing the system, of securing uniformity of procedure, the installing of a system of records, and the supervision of the work of the probational forces in each judicial district, headed by a district probation officer.

[1] In extreme cases, and in cases of more or less minor offenses, probation is being granted under supervision of special volunteer probation officers, appointed for each particular case. However, the placing upon probation generally requires an extensive investigation to be made by competent officers of the government. The court should, through its own official channels, be able to secure detailed written data covering the circumstances of the offenses, the previous record, character, family history, home conditions, mental and physical conditions, habits, associations, and other important facts regarding the accused. In many cases medical certificates will be required. The law clearly contemplates, and the situation necessarily requires, that when probation is granted there must be close supervision of the probationer, and systematic reports submitted to the court.

[2] No hard and fast rule can be laid down as to the type of offenders who should be considered for probation. I have heretofore in several cases expressed my general views on this subject. It is my view that the Congress, in passing the Probation Law, had in mind particularly juvenile offenders, youthful offenders, first offenders, and offenders whose release on probation will not endanger the public, and where there is reason to believe that the individual will make a serious effort to overcome the abnormalities and difficulties which brought him into court. In general, the offenses contemplated, as I view it, would be largely those of a more or less minor character, or those induced by youth, inexperience, mental abnormalities, physical abnormalities, ignorance, poverty, superstition, jealousies, or heat of passion. Conversely, I do not think that the law, except in very rare cases, should have application to hardened, habitual criminals, to those who need to be restrained as a matter of protection to themselves and to society, or to those of mature years, of fair education, of broad experience, who have committed some very deliberate offense. A survey of the probation systems of the several states supports this view.

[3] It is, of course, fundamental that the Probation Law was not intended as a substitute for the motion for new trial, for review on appeal because of errors committed at the trial, as a substitute for the parole system now in operation, or in lieu of the constitutional power of the executive of commutation and pardon. In the past, federal District Courts have been embarrassed for want of authority to properly deal with unusual cases under the criminal laws. Often courts suspended sentences indefinitely in an effort to meet these situations. The authority of the courts to suspend sentence has always been questioned. The United States Supreme Court, in Ex parte United States, Petitioner, 242 U. S. 27, 37 S. Ct. 72, 61 L. Ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355, settled that matter by holding definitely and finally that the courts have no such power of suspension. It appeared that about 2,000 defendants were on probation when the opinion in Ex parte United States was filed in 1916. In order to give an op-

portunity to Congress to legislate on the subject, the writ of mandamus in the matter was stayed until the end of the term (October, 1916), when it became effective as a matter of course. Pending this, the President of the United States issued pardons to all individuals affected.

Nearly eight years expired after the decision in Ex parte United States, Petitioner, before Congress acted. The authority of Congress to enact the precise statute which it has may lack constitutional sanction. The Constitution (article 2, § 2, subd. 2) says that the President "shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." It may possibly be held that giving the courts power to completely suspend punishment constitutes an invasion of this power of the executive.

For many years there has been agitation for a federal prison for women, for special provisions by which the juvenile offender might be separately dealt with, and for other national legislation dealing with the thought of special treatment for special classes of offenders and delinquents. The Department of Labor and the bureaus thereof dealing with the woman in industry and the child in industry have urged Congress for such legislation. The Probation Act of March 3, 1925, apparently is the answer of Congress to these appeals, suggestions and urgings. Provision has been made for a special prison for women, which shall be both reformatory and punitive. Under the Probation Law, the court is given a free hand in dealing with all offenders.

[4] This case was tried by Judge Bledsoe nearly a year ago. I have carefully read his instructions to the jury. They were most liberal. The jury has spoken. It said that this man used the United States mails in furtherance of a scheme to defraud. He is a man in the prime of life, of good average education, of broad business experience, of normal mental equipment. So far as anything appears, he has led a decent life prior to this offense. His experience is a repetition of the experiences of many others. Truly has the Circuit Court of Appeals, Second Circuit, said in a mail fraud case:

"Many a man embarks with hope, if not confidence, upon a business voyage that goes awry; in the beginning, he is honest and has no thought of wrongdoing; when trouble arises, temptation comes, and falsehoods often seem the only way to defer collapse. Just when the sanguine man becomes reckless, and the reckless one criminal, cannot be laid down as a matter of law; if facts justify the inquiry, the answer is solely for the jury." Looker v. United States, 240 F. 932-934.

[5] The Probation Act authorizes the District Court, "when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be served thereby," to suspend sentence and place the accused on probation. What is meant by "the ends of justice"? What are "the best interests of the public"? What are the best interests of the defendant? Considering these three factors together, what is the duty of the court in this case?

It is not contended, of course, that the penal provisions of section 215 of the Criminal Code are repealed by the Probation Law. The Constitution of the United States accentuates the rights of the individual to a greater extent than does the Constitution or fundamental law of any other government of which I know anything. In its essentials, the outstanding feature of the American Constitution is that it provides at once an efficient and effective government with the greatest possible protection of individual rights. It appears to me that the "ends of justice" require that in a matter involving the liberty of a citizen the government must seek to preserve a proper balance between the rights of all the people to have their laws enforced, on one hand, and the rights of the individual under the Constitution, on the other hand. That should be justice. Clearly "the best interests of the public" are promoted by justice. The best interests of the defendant and the best interests of the public are largely the same. The best interests of the public are served when exact justice is done the individual. When the violator of the law is given more or less than justice, the public interests are violated, and the ends of justice are not served.

American jurisprudence may be faulty in the matter of dealing with offenders against the criminal laws. It probably is. We cannot, however, get away from the fact that thoughtful critics of our criminal law practices, so far as they bear upon the subject of punishment, take the ground that we are too lenient with the offender, and not careful enough of the rights of the people, as represented by government.

Our laws protect the individual in the course of ascertaining the facts as to his guilt or innocence in a most careful manner. Many steps and many individuals are called into play, from the time the charge is made until the person charged is either acquitted

or punished. A grand jury sifts the facts, and must find that probable cause exists. A district attorney marshals the facts and presents them to the court and jury. A jury of 12 citizens determines the question of facts involved. A judge deals with the questions of law, and determines the punishment in case the jury finds the accused guilty. All these steps are separate, and performed by individuals and groups wholly independent. of each other and in the highest degree impartial.

[6] In this case all these steps were carefully taken. The trial jury found the defendant guilty. The accused did not take the stand as a witness and explain his connection with the charge. He is not to be criticized for that. However, since he held his peace during the trial, it is now too late for him to make explanation of his part in the transaction.

[7] The able counsel for the accused has shown unusual diligence, loyalty, and devotion on behalf of his client. Nothing has been left undone that a skilled advocate, a bright mind, and a devoted lawyer might do in the cause of him whom he represents. It is the outstanding thing in this case. He seems to take the position that the brand of infamy is not in the fact of conviction by the jury, but in the application of the punishment. His position seems to be that salvation for the defendant rests in not being imprisoned, and that if he is imprisoned the door of opportunity is closed to him thereafter. If that is correct, then the American people are all wrong in their theory of administering the criminal laws. We must assume that our laws are just; otherwise, there is no sense in the words "ends of justice." When the accused has been found guilty, and that judgment has become a permanent fact and beyond modification, he has reached the bottom of the valley of the shadow. Subsequent events under the theory of our law make for redemption, even though it involve imprisonment.

[8] Counsel stresses the fact that seven jurors have said that leniency towards the accused would be a proper conduct. Has leniency not been shown in the sentence imposed? The accused was found guilty on a number of counts, and the statute provides a maximum penalty of imprisonment of five years on each count. The court imposed a sentence of two years of imprisonment, covering all. It may not be improper for me to say that the jury performed its function apparently in accordance with their oaths of office and the facts. It is a perfectly simple matter, when one no longer carries responsibility, to advise him who does. The judge who pronounced sentence, in a letter of recent date, says: "It is my deliberate judgment that Nix was properly and justly convicted. * * * Under the facts presented to me, gathered from the testimony at the trial, I believe that the sentence pronounced upon Nix was a just and proper one, and that he ought to be compelled to submit thereto."

To determine what is justice in a given case is not a simple proposition. It is very complicated. The American people cannot afford to do anything which is not just. A course of conduct by a public officer with reference to a citizen, which is an injustice to the American people under their laws, cannot be defended.

[9] After a most careful consideration of everything that has a bearing upon the question before me, I have reached the conclusion that it would be improper for me at this time to disturb the sentence imposed by the judge before whom the defendant was tried. On the other hand, I do not wish to close the doors provided by the Probation Law against a different course, should subsequent events indicate that the defendant should be dealt with differently than the exact terms of the sentence imposed. It is my understanding that the opinion of the Circuit Court of Appeals, filed in this matter August 3, 1925, has the effect of continuing control in the court of the judgment, until the judgment is satisfied. Accordingly I shall deny the application for probation at this time, without prejudice to its renewal one year from the date upon which the defendant shall enter upon the sentence imposed.

It is so ordered.