UNITED STATES v. PRUSSIAN.

No. 398.

Circuit Court of Appeals, Second Circuit.
June 30, 1930.

Harold L. Turk, of Brooklyn, N. Y. (S. Rosenwein, of Brooklyn, N. Y., of counsel), for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Emanuel Bublick, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellant, an attorney at law, was convicted below for falsely forging by endorsement, the payee's name on a draft of the United States, giving a refund of income taxes. Title 18, U. S. Code, § 262 (18 USCA § 262) U. S. Criminal Code § 148. He was employed to obtain a refund of taxes for the estate of Jennie E. Mackay. His power of attorney dated February 27, 1925, authorized him to represent his client and act for him, "in connection with all matters in any way relating to the Federal Income Tax return filed by me on behalf of said Estate, covering the 1919 income tax liability of said Estate, and in particular, to represent me and act for me in prosecuting a claim for refund of a portion or all of said income taxes; giving and granting unto my said attorney, full power and authority to do and perform all and everything requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present, also empowering him to receive all official communications, and granting him full power of substitution and revocation. * * *"

The government granted a refund for $9,044.37, but, before delivering the check to the appellant, the government required another power of attorney. It was dated April 6, 1926, and authorized him "to represent me and act for me in connection with all matters in any way relating or pertaining to the income tax return of the estate of Jennie E. Mackay for the year 1918 and in particular in the prosecution of a claim for refund of income taxes paid on account of 1918 income tax liability, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing requisite and necessary to be done in and about the premises and fully to all intents and purposes and (sic) I might or could do if personally present.

"*Also empowering him to receive and sign all official communications.*

"*Also empowering him and giving him full authority to receive but not to endorse checks in payment of refund in connection* with the aforesaid matter. * * *" (Italics ours.)

The appellant concedes that he received the draft and indorsed on the back thereof: "Malcolm S. Mackay (written in fine close hand) Admr. Est. of Jessie E. Mackay (typewritten) Aaron Prussian, Attorney (flowing large hand) Aaron Prussian (flowing large hand)." There was also written: "Pay to the Order of Bank of Coney Island, J. L. Buckman." Buckman cashed the check for appellant, retaining sufficient to pay a mortgage on appellant's home; and gave the balance to Prussian, a sum stated to be between five and six thousand dollars. It was agreed that the appellant had a 15 per cent. contingent retainer to be collected out of the sum refunded.

The defense claimed was that the appellant acted in good faith, believing he had authority to indorse the check and retain his fees and then intended to remit the difference to the estate. But there was evidence given by the attorney for the estate that he first found out that appellant had indorsed the check about six months after it had been cashed, and during that time he had no communication from appellant and learned of the cashing of the check by chance only. When the appellant was apprehended and questioned by a secret service agent of the government, he offered to make restitution to the government of the amount due, but failed to do so; whereupon, after a delay of upwards of two weeks, the prosecution was instituted. He never did make restitution to his client.

The statute (U. S. Code, tit. 18, § 261 [18 USCA § 261], U. S. Criminal Code § 147) provides that an obligation or other security of the United States shall be held to mean a check or draft for money drawn by or upon authorized officers of the United States which have been or may be issued under any act of Congress. U. S. Code, tit. 18, § 262 (18 USCA § 262). U. S. Criminal Code § 148, makes it a criminal offense for one with intent to defraud to falsely forge, counterfeit, or alter an obligation or other security of the United States. The indictment charged an offense under section 262, tit. 18, U. S. Code (18 USCA § 262) U. S. Criminal Code § 148, pleading the indorsement of the draft by forging the name of the payee, and "that the said draft for money with the said forged endorsement thereon did together constitute a forged obligation of the United States as the defendant then and there well knew, with intent then and

there and thereby to defraud." This was sufficient. Hamil v. United States, 298 F. 369 (C. C. A. 5); Alvarado v. United States, 9 F.(2d) 385 (C. C. A. 9); United States v. Jolly, 37 F. 108 (D. C. Tenn.) This draft to pay money was an obligation of the United States (Neall v. United States, 118 F. 699 [C. C. A. 9]), and forging the indorsement is punishable under section 148 of the Criminal Code (U. S. Code, tit. 18, § 262 [18 USCA § 262]). Hamil v. United States, supra; Alvarado v. United States, supra.

The indorsement was without authority. The second power of attorney expressly prohibited such indorsement, and it is of no importance that the first was more general or did not prohibit in express words such indorsement. Bailey v. United States, 13 F. (2d) 325 (C. C. A. 9), is relied upon by the appellant, but it is distinguishable. There it was held there was no testimony showing that the defendant's authority was in any way specifically restricted under his general authority as attorney at law retained to collect a claim. He had authority to receive cash in payment of the claim, and he had the implied authority to indorse and cash the check. At bar, there was a studied effort to imitate Malcolm S. Mackay's handwriting, as a comparison of this with his own admitted handwriting shows. Malcolm S. Mackay's name was signed in a small regular handwriting, and appellant's name was signed in a large flowing handwriting, showing his habitual signature. It points out by these different signatures, an effort to deceive. To be sure, the appellant made explanation as to this, but the jury apparently decided against it.

The court permitted the jury to pass upon the alleged authority, express or implied, to indorse the draft and also whether or not the appellant in good faith believed that he had such authority. The court charged the jury that ordinarily, if appellant was employed to collect the draft, that carried with it the authority to sign Mackay's name, but pointed out that the difficulty arose because of the second power of attorney, which restricted his authority to indorse, and, while he was authorized to receive it, he indorsed the check. He left it to the jury to say whether or not the appellant intentionally forged the name with intent to defraud the government. This was as favorable to the appellant's case as he could have expected. We cannot reverse the finding of want of authority to make the indorsement. Felder v. United States, 9 F.(2d) 872 (C. C. A. 2);

Looker v. United States, 240 F. 932 (C. C. A. 2); Fraina v. United States, 255 F. 28 (C. C. A. 2).

Judgment of conviction affirmed.