HART v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 19, 1910.)

No. 2,040.

1. INDICTMENT AND INFORMATION (§ 110*)—PROSECUTION FOR VIOLATION OF OLEOMARGARINE ACT—INDICTMENT.

An indictment, charging the defendant generally in the language of the statute with carrying on the business of a manufacturer of oleomargarine without having paid the special tax required by Oleomargarine Act Aug. 2, 1886, c. 840, § 3, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2229), as amended by Act May 9, 1902, c. 784, § 2, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 864), is sufficient, and need not set out a statement of the facts which constitute the defendant a manufacturer.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289–294; Dec. Dig. § 110.*]

2. CRIMINAL LAW (§ 573*)—TIME OF TRIAL—CONSTITUTIONAL RIGHT TO SPEEDY TRIAL.

A delay in placing an indicted defendant on trial, where it was caused by his evading arrest and becoming a fugitive from justice until a short time before his trial, is not a denial of his constitutional right to a speedy trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1292; Dec. Dig. § 573.*]

3. WITNESSES (§ 240*)—TRIAL—EXAMINATION OF WITNESSES—LEADING QUESTIONS.

The court may properly permit the asking of leading questions in a criminal case, in the interest of expedition in carrying on the trial, where it is without prejudice to any rights of the defendant.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845; Dec. Dig. § 240.*]

4. CRIMINAL LAW (§ 441*)—TRIAL—RECEPTION OF EVIDENCE.

On the trial of a defendant on the charge of coloring uncolored oleomargarine without having paid the special tax as a manufacturer, and of reselling the colored article without payment of the additional tax

thereon, where an officer of a corporation testified to sales of uncolored oleomargarine to defendant, based on the charge tickets, which he testified were the original entries, and also that drafts were drawn on defendant for each shipment, all of which, as shown by the company's ledger, had been paid, his testimony, with that of an officer of the bank through which the drafts were drawn, was sufficient to establish the fact of such payment, in the absence of any denial; and it was not error to refuse to require the witness to produce the company's ledger.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 411.*]

5. CRIMINAL LAW (§ 400*)—TRIAL—RECEPTION OF DOCUMENTARY EVIDENCE.

Where records are produced in court and subject to examination by a defendant, there is no objection to permitting the introduction in evidence of an abstract made by a witness from such records, giving the pertinent facts.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879-886; Dec. Dig. § 400.*]

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan.

John Hart was convicted of criminal offenses, and brings error. Affirmed.

Thomas Mulvihill, for plaintiff in error.

Frank H. Watson, U. S. Atty., and J. Edward Bland, Asst. U. S. Atty.

Before WARRINGTON, Circuit Judge, and COCHRAN and TAYLER, District Judges.

TAYLER, District Judge. At the March term, 1906, of the District Court for the Southern Division of the Eastern District of Michigan, the grand jury returned three indictments for violation of the oleomargarine law against the plaintiff in error, John Hart, and two others. One indictment charged Hart with carrying on the business of a manufacturer of oleomargarine without having paid the special tax required by law. A second indictment charged him in the first count with producing, removing, and furnishing certain colored oleomargarine, and with defrauding the United States by not paying the tax thereon, and in the second count with the same offense as to another lot of colored oleomargarine. The third indictment charged him with violation of the law in neglecting to cancel stamps on empty oleomargarine packages. The three indictments were, by order of the court, consolidated, and the trial proceeded upon all of them. A verdict of guilty was returned against the defendant below on all three indictments, and from the judgment entered error is prosecuted.

Thirty-nine assignments of error are presented on behalf of the plaintiff in error. Many of them are trivial, and none substantial. Classifying them, they relate to the sufficiency of the indictments, the admission of testimony, the refusal to strike out certain testimony, the refusal to charge as requested, and certain instructions given by the trial judge. These assignments will be taken up in the general order just indicated.

The objections to the first indictment, which charges the defendant with carrying on the business of a manufacturer of oleomargarine without having paid the special tax, are that the indictment does not charge the defendant with manufacturing for sale or removal for consumption by others; that it charges no offense known to the law; that the indictment contains no statement of facts constituting any specific offense; that it does not contain any statement of facts constituting the defendant a manufacturer; that it does not charge the place where the defendant manufactured for sale; and that the defendant was not given a speedy trial, as provided by the sixth amendment to the Constitution of the United States. In none of these objections do we find any serious ground of attacking the sufficiency of the indictment. The indictment charges the defendant in the language of the statute, and is in every substantial respect in the same form as the indictment which was sustained by this court in the case of Hartman v. United States, 168 Fed. 30, 94 C. C. A. 124. The last objection made to this indictment, if it means anything, must refer to the fact that the defendant, in anticipation of this prosecution, escaped the vigilance of the marshal and was a fugitive from justice until a short time before he was put upon trial. This can hardly be said to be a denial of the constitutional right to a speedy trial.

The objections to the other two indictments are of a similar nature, although not identical; and it is a sufficient answer to say that they set out the offenses charged substantially in the language of the statute, and, therefore, sufficiently define the crime charged, and informed the defendant of the offense with which he was charged. As none of the objections to the indictments raise any new or difficult question, it would unnecessarily prolong this opinion to devote any further attention to them.

Some of the assignments of error, as we have just indicated, relate to questions as to the admissibility of testimony. These assignments are covered by Nos. 2 to 27, inclusive. It will be well, before considering these specific objections, to generally state the facts as developed by the testimony on behalf of the government. The defendant did not himself testify or offer any testimony.

The plaintiff in error, during the period covered by these indictments, was a legally qualified dealer in white oleomargarine in the city of Detroit. The tax on white oleomargarine is a quarter of a cent a pound; on colored oleomargarine, 10 cents a pound. The general charge against Hart was that he received large quantities of white oleomargarine, and that he caused this white oleomargarine, or a large part of it, to be artificially colored yellow in imitation of butter, and did not pay the tax which the law provides shall be levied on colored oleomargarine. He purchased between April 1, 1905, and February 16, 1906, from Braun, Fitts & Co., of Chicago, manufacturers of oleomargarine, over 125,000 pounds of white oleomargarine. This oleomargarine was shipped in tubs marked "J. H." to Detroit, and was paid for by Hart. In January and early in February, 1906, internal revenue officers, having been led by their pre-

vious investigations to do so, found that the tubs containing this white oleomargarine were being taken from the Michigan Central Station in Detroit to a residence at the corner of Orchard and Trumbull streets, which was not the regular place of business of the defendant. The shipments arrived from Chicago two or three times a week, and many cart loads were conveyed to the premises at Trumbull street. During the same period a large quantity of empty five-pound cartons were delivered to the same place, and many full five-pound cartons were taken away. Some of these empty cartons were taken in defendant's wagon from his store to the premises above referred to, and many of the filled cartons were taken thence to the defendant's store at 378 Gratiot avenue.

While the premises at Trumbull and Orchard were being watched by the revenue inspectors, a machine called a "butter worker" (that is, a machine in which white oleomargarine may be worked over and mixed with coloring matter) was moved therefrom to the adjoining house. An examination made of the butter worker after its removal disclosed the name of the maker, and also the fact that it was the property of John Hart, or that he was interested in it. A few days later the butter worker was removed from the house adjoining the one on the corner of Orchard and Trumbull, and taken to a house at the corner of Riopelle and Winder streets. To this place also empty five-pound cartons were taken, and from it filled cartons were carried to the defendant's place of business. An examination of the premises at Riopelle and Winder, made under the authority of a search warrant on the 16th day of February, disclosed all of the paraphernalia for artificially coloring uncolored oleomargarine. Here, also, were found three empty tubs bearing 10-cent tax stamps which were wholly intact. Upon the lids of each of these tubs were the initials, "J. H., Detroit, Michigan."

It is not necessary to recite any more fully the testimony disclosing the character of the work which was carried on on these premises. The articles found there conclusively establish the fact that colored oleomargarine had been there manufactured in large quantities and that it was packed in five-pound cartons. Indeed 262 cartons filled with colored oleomargarine which had evidently just been mixed were found there by the officers, as well as a can partially filled with coloring matter used to color butter or uncolored oleomargarine. Ten 60-pound tubs of uncolored oleomargarine were standing around a large hard-coal base-burner stove. There was a very hot fire in the stove; the purpose manifestly being to soften the oleomargarine, so that it could be worked up with artificial coloring matter. The windows were covered with paper, bags, and coffee sacks, so as to screen them from outside observation. In the cellar were fragments of thirty tubs which had upon them the initials "J. H., Detroit, Michigan." At defendant's place of business a large number of cartons containing colored oleomargarine were seized. Some of these were concealed under a window. The defendant himself was seen at least twice coming out of the premises at the corner

of Orchard and Trumbull, once a few minutes before a load of filled cartons left it.

We have not undertaken to refer to all of the testimony bearing upon the question of the defendant's guilt; but it is quite apparent from what has been stated that no other rational inference could be drawn from all of it than that the defendant was the responsible person engaged in the business of buying uncolored oleomargarine carrying a small tax and transforming it into colored oleomargarine, upon which a tax of 10 cents a pound was due, and that he was marketing it at his place of business on Gratiot street, and doubtless elsewhere. On the facts thus disclosed the jury could have come to no other conclusion than that the defendant was guilty on all of the charges set up in the indictments.

Even if the court had erred in admitting certain testimony over the exception of the defendant, it did not affect the substantial rights of the defendant. Many of these exceptions relate to leading questions, so called, which the court permitted the district attorney to ask witnesses. Apart from the rule that the propriety of asking leading questions rests in the discretion of the court, and is not to result in a reversal, unless there was a gross abuse of discretion to the prejudice of the defendant, we do not find that the court erred in permitting the district attorney to ask such leading questions as were asked. It would unnecessarily prolong the trial of a case if some leading questions were not permitted, and the instances in which the court allowed the district attorney to ask such questions were all in the interest of expedition in carrying on the trial, and wholly without any prejudice to the rights of the defendant.

One of the witnesses for the government, Francis M. Lowrie, was an officer of Braun, Fitts & Co., and testified to the amount of oleomargarine sold by his company to the defendant. He predicated his testimony on the charge tickets, which he described as the original entries, and testified that he had with him at the time that he testified all the tickets showing sales from April 1, 1905, up to the 5th of February, 1906, aggregating 125,000 pounds or more. He testified that nearly all of the bills were paid through drafts attached to the bills of lading, and that the few shipments which were made on open account were all paid for by draft drawn the same day on the defendant through the First National Bank of Detroit. The witness then added that the ledger account shows that the charges were all paid. Having testified that the ledgers were in Chicago, defendant's counsel insisted that they be produced as the best evidence. We see no force in the exception to the ruling of the court below on this demand that this ledger be produced. It did not contain the original entries nor was it the best proof; and the statement of the officer of the corporation and of the auditor of the Detroit bank that the drafts for all of this oleomargarine had been paid was entirely adequate to establish the proposition, in the absence of any denial of it.

Several assignments of error relate to the testimony of Harry G. Brady, a clerk in the Chicago internal revenue office having charge

of the oleomargarine record. The law requires all sales of oleomargarine made by manufacturers to be reported to the collector of internal revenue. Of this the law requires that a record be kept. Brady, having with him the reports of the sales made by Braun, Fitts & Co. to the defendant during the period in controversy, testified that from these records that were then in his possession he had made an abstract or memorandum. Objection is made that the records themselves, although present, were not introduced, but only an abstract. No proper criticism can be made of this method of proving the condition of the record, because the record was there to be examined by the defendant, if desired. No objection was otherwise made to the competency of the testimony, but only that an abstract could not be used where the witness said the abstract was made from the original papers then in his possession.

The assignments of error from 7 to 27, inclusive, are trivial, and need nothing more than a passing comment. They relate largely to leading questions, so called, to the demand of the defendant that a witness make a chemical analysis in the presence of the jury of samples of oleomargarine with respect to which he was testifying, and other incidents of a similar nature.

The twenty-eighth assignment relates to the denial of the motion that the court direct a verdict for the defendant, which was properly denied.

Assignments 29, 30, 31, and 32 relate to requests to charge which were substantially covered by the charge as given. The requests referred to in Nos. 33 and 34 are irrelevant. The request referred to in assignment of error No. 35 was substantially covered by the charge as given. Assignments 36, 37, 38, and 39 refer to exceptions to the charge of the court. None of them is well founded. The charge in these respects, as well as in all others, was proper and fair.

With some patience we have examined here all of these numerous assignments of error, and have arrived at the conclusion that the defendant had a fair trial, and that he was properly convicted on all three indictments.

The judgment of the District Court is affirmed.