KELLY et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1919.)

No. 2978.

1. INDICTMENT AND INFORMATION ⬅⬅171—FAILURE OF PROOF OF CONSPIRACY—EFFECT—CONVICTION OF CRIME.

Conspiracy alleged may fail in proof, as well as proved conspiracy may fail in execution; hence failure to prove the existence of a conspiracy alleged to have been formed to defraud the United States cannot affect the right, regardless of conspiracy, to prove that the fraud which was the alleged object of the conspiracy was actually committed.

2. CONSPIRACY ⬅⬅37—CRIMINAL LAW ⬅⬅876½—CONSPIRACY TO DEFRAUD GOVERNMENT—INCONSISTENT VERDICT.

An indictment for conspiracy to defraud the United States and one for the offense which was the object of the alleged conspiracy are for different offenses, and, where the cases are consolidated for trial, a verdict of acquittal under the conspiracy indictment is not inconsistent with a verdict of guilty under the other, although the overt acts charged in the former are some of acts relied on under the latter.

3. CRIMINAL LAW ⬅⬅195(1)—FORMER ACQUITTAL—IDENTITY OF OFFENSES.

A plea of autrefois acquit is unavailing, unless the offense presently charged is precisely the same in law and fact as the former one relied on under the plea.

4. CORPORATIONS ⬅⬅369—CORPORATE AGENTS—CRIMINAL RESPONSIBILITY.

It is a rule of the criminal law, as well as the civil, that corporate agencies cannot shield themselves behind the corporation, where they are the actual and efficient actors in committing a fraud or an offense, and an indictment is good which charges defendants with committing an offense "while engaged as officers, agents, and employés" of a corporation.

5. CRIMINAL LAW ⬅⬅59(5)—INDICTMENT AND INFORMATION ⬅⬅124(6)—CHARGING ACCESSORY AS PRINCIPAL—JOINDER OF PRINCIPAL.

Under Criminal Code, § 332 (Comp. St. § 10506), making aiders and abettors principals, one formerly known as an accessory may be charged as a principal, without joining the principal offender.

6. CRIMINAL LAW ⬅⬅619—CONSOLIDATION OF INDICTMENTS FOR TRIAL.

Rev. St. § 1024 (Comp. St. § 1690), investing trial judges with discretionary power to require indictments charging one or more persons with different, though connected, acts or transactions of the same class of crimes or offenses to be consolidated for trial, applies to separate indictments of the same persons; one charging conspiracy to commit a substantive offense, and the other charging its actual commission.

7. CRIMINAL LAW ⬅⬅1144(14)—REVIEW—INSTRUCTIONS ON ADMISSION AND PURPOSE OF EVIDENCE—PRESUMPTION.

It is not to be assumed in a criminal case, any more than in a civil case, that a jury cannot grasp the meaning of the court's instructions touching admissibility and purposes of evidence, even though a change in ruling in that behalf be involved.

8. CRIMINAL LAW ⬅⬅1159(2)—SUFFICIENCY OF EVIDENCE—REVIEW BY APPELLATE COURT.

On review of the evidence in a criminal case, it is for the appellate court to determine only whether there was evidence introduced which was proper to go to the jury and legally sufficient to sustain the verdict.

9. CRIMINAL LAW ⬅⬅1151—REVIEW BY APPELLATE COURT—DENIAL OF CONTINUANCE.

Refusal of the trial court to grant a continuance is reviewable only where it is clearly shown that there was an abuse of discretion.

⬅⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Criminal prosecution by the United States against Dennis Kelly, Michael Leo Corbett, William H. Eberst, and William H. Kelley. Judgment of conviction, and defendants bring error. Affirmed.

Petition for writ of certiorari denied by United States Supreme Court, 249 U. S. 616, 39 Sup. Ct. 391, 63 L. Ed. ——.

A. T. Seymour, of Columbus, Ohio, Ralph Crews, of New York City, and H. J. Booth, of Columbus, Ohio, for plaintiffs in error.

Robert W. Childs, Sp. Asst. Atty. Gen.

Before WARRINGTON and DENISON, Circuit Judges, and WESTENHAVER, District Judge.

WARRINGTON, Circuit Judge. Two indictments were returned in the court below, September 4, 1914, charging plaintiffs in error and certain other persons with violation of section 37 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]) and of the Oleomargarine Act (Act Aug. 2, 1886, c. 840, 24 Stat. 209). The offense charged in the first indictment was conspiracy, and that in the second was fraud as respects the internal revenue tax of 10 cents a pound imposed upon oleomargarine manufactured and sold with artificial coloration, causing "it to look like butter of a shade of yellow." The plaintiffs in error, Dennis Kelly, Michael Leo Corbett, William H. Eberst, and William H. Kelley (hereinafter called defendants), were respondents in both indictments, with Cornelius A. Hayes and Otto S. Marckworth and, in the first indictment, were named with Mansfield B. Snevily, who, having testified before the grand jury, was not indicted; Hayes is dead, and Marckworth, having been called by the prosecution to testify, was not placed on trial. The cases were consolidated for purposes of trial. Under the conspiracy indictment or count, a verdict of not guilty was returned in favor of each defendant; but under the second indictment or count (comprising in itself a number of counts) a verdict of guilty was returned against each defendant. Sentences were pronounced, and the defendants prosecute error.

The oleomargarine in dispute was sold and distributed in the name of the Capital City Dairy Company. This company was organized under the laws of New Jersey in 1903, and its factory was located and maintained at Columbus, Ohio. The amount of oleomargarine manufactured at its plant grew rapidly, and the taxes alleged to have legitimately accrued to the government and which were not paid amounted to large sums. The validity of the indictments was tested upon motions to quash and upon demurrers. The trial occupied several weeks, and at the close of the testimony motion to direct was denied, whereupon a well-considered charge was delivered. Motions notwithstanding the verdict under the second indictment, for new trial, and in arrest of judgment, were overruled. Upon the motions to quash and the demurrers, and likewise on the motion for new trial, the court ren-

dered elaborate opinions. One hundred and thirty-five assignments of error are presented. It is not necessary to call distinct attention to all these assignments; indeed, this could not be done within space at all reasonable. But the nature and effect of the assignments will be sufficiently understood from those specifically commented on.

1. *Verdicts Claimed to be Inconsistent.*—It is urged in behalf of defendants that the conspiracy and overt acts alleged in the first indictment so far involved the frauds alleged in the second one as to require acquittal also under it, and hence that the findings and the verdict of the jury under the second indictment are "in fundamental and irreconcilable conflict with the findings and verdict of the jury" under the first one. In thus speaking of the indictments we, of course, have in mind the consolidation of the conspiracy case, numbered 798, with the fraud case, numbered 800, for purposes of trial; but it will be convenient occasionally to distinguish the cases by their original numbers, regardless of any effect the consolidation had in converting the two indictments into counts of a single indictment. We may say, further, that while the legal sufficiency of 798 is not now important, in view of the verdict thereunder, we cannot very well dispose of the question of claimed inconsistency without alluding to the schemes, respectively, of both indictments, and at the same time disclosing our view of the sufficiency in law of 800; and this view must also be determinative of the motion to quash 800, also of the demurrer thereto, and, in connection with the question of inconsistency, the motions non obstante and in arrest of judgment.

In considering the question of inconsistency between the verdicts, it is to be observed that indictment 798 charges that continuously from September 10, 1911, to the date of presentation of the indictment (September 4, 1914), the defendants, with Hayes and Marckworth, and also the "coconspirator" Snevily, had unlawfully and feloniously conspired, combined, confederated, and agreed to defraud the United States of a large sum of money ($1,000,000), being the aggregate of divers sums accruing from day to day as the internal revenue tax of 10 cents a pound upon oleomargarine "not free from artificial coloration that caused it to look like butter of a shade of yellow," which the defendants and their coconspirator "were to cause to be manufactured and produced" during such period of time, "while engaged as officers, agents and employés of the Capital City Dairy Company, a corporation, in causing that corporation to carry on the business of a manufacturer of oleomargarine * * * and from day to day unlawfully and knowingly to cause the same to be removed * * * and sold, vended and furnished to and for the use and consumption of others * * * and to dealers in oleomargarine," without affixing or causing to be affixed any coupon stamps representing such internal revenue tax, and without otherwise paying or accounting to the United States for such tax; and a large number of transactions are set out by dates, within the time above mentioned, as alleged overt acts committed in execution of such conspiracy.

Indictment 800 comprises nine counts. Count 1 charges that from March 10, 1913, to May 1, 1914, the defendants, with Hayes and

Marckworth (omitting Snevily), "unlawfully and feloniously did defraud the United States of a large sum of money" ($1,000,000), "being the aggregate of divers sums * * * which became due and payable to the United States from day to day during said period of time * * * as and for the internal revenue tax of 10 cents a pound upon oleomargarine * * * not free from artificial coloration that caused it to look like butter of a shade of yellow"; that the oleomargarine was manufactured by defendants "while engaged as officers, agents and employés of said the Capital City Dairy Company * * * in carrying on, for and in the name of said corporation, the business of a manufacturer of oleomargarine"; that on each week day they manufactured 20,000 pounds and removed the product and sold it for use and consumption "otherwise than upon their own several family tables," knowing it to be "oleomargarine not free from such artificial coloration," without affixing any coupon stamps representing payment of the internal revenue tax of 10 cents per pound, and without paying or otherwise accounting to the United States for such tax or any part of it. The difference between count 1 and count 2 is that the latter charges that on May 1, 1914, the defendants as individuals, not as officers or employés, though in the name of the Dairy Company, manufactured 20,000 pounds of oleomargarine with artificial coloration, as stated in the first count, and sold it for use and consumption by others without paying or making any provision for payment of the internal revenue tax of ten cents a pound. Count 3 is the same as count 2, except that the date is May 5, 1914, and that the defendants are charged with committing the acts individually, and not in the name of the Dairy Company; count 4 same as count 3, except that the date is June 6, 1914, and the amount 9,600 pounds; count 5 same as count 1, except that the date is May 11, 1914, and the amount 30,000 pounds; count 6 same as count 5 except that the date is May 15, 1914, and the amount 18,000 pounds; count 7 same as counts 3 and 4, except that the date is June 22, 1914, and the amount 18,000 pounds; count 8 same as counts 3, 4, and 7, except that the date is July 2, 1914, and the amount 24,000 pounds; count 9 differs (if it be a difference amounting to a distinction) from count 1 only in charging that defendants, as officers, agents and employés of the Dairy Company "caused" to be committed acts similar to those stated in count 1, instead of directly committing such acts themselves.

[1] There is an obvious and substantial distinction between the two indictments, in that the gist of the first is the alleged conspiracy (Williamson v. United States, 207 U. S. at page 447, 28 Sup. Ct. 163, 52 L. Ed. 278), and that of the second, in each of its counts alike, is the alleged fraud. The declared object of the conspiracy alleged, it is true, was to defraud the government of taxes identical in kind with those of which it is alleged in the second indictment the government was actually defrauded; but it is perfectly plain that two distinct offenses were alleged. Conspiracy alleged may fail in proof, as well as proved conspiracy may fail in execution. Failure, then, to prove the existence of a conspiracy alleged to have been formed to commit a particular character of fraud cannot affect the right,

regardless of conspiracy, to prove that fraud of the same character was actually committed. This is well within settled principles of the doctrine of conspiracy. As Judge Sater pointed out in overruling the motions to quash and the demurrers to the indictments, overt acts are something apart from the mere conspiracy, citing, among other decisions, Joplin Mercantile Co. v. United States, 236 U. S. 531, 535, 35 Sup. Ct. 291, 293 (59 L. Ed. 705), where Mr. Justice Pitney said:

"It is true, as held in Hyde v. Shine, 199 U. S. 62, 76 [25 Sup. Ct. 760, 50 L. Ed. 90], and Hyde v. United States, 225 U. S. 347, 359 [32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614], that a mere conspiracy, without overt act done to effect its object, is not punishable criminally under section 37 of the Criminal Code. But the averment of the making of the unlawful agreement relates to the acts of all the accused, while overt acts may be done by one or more less than the entire number, and although essential to the completion of the crime, are still, in a sense, something apart from the mere conspiracy, being 'an act to effect the object of the conspiracy.'"

Again, it was laid down in United States v. Rabinowich, 238 U. S. 78, 85, 35 Sup. Ct. 682, 683 (59 L. Ed. 1211):

"It is apparent from a reading of section 37, Criminal Code (section 5440. Rev. Stat.), and has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. Callan v. Wilson, 127 U. S. 540, 555 [8 Sup. Ct. 1301, 32 L. Ed. 223]; Clune v. United States, 159 U. S. 590, 595 [16 Sup. Ct. 125, 40 L. Ed. 269]; Williamson v. United States, 207 U. S. 425, 447 [28 Sup. Ct. 163, 52 L. Ed. 278]; United States v. Stevenson (No. 2) 215 U. S. 200, 203 [30 Sup. Ct. 37, 54 L. Ed. 157]. And see Burton v. United States, 202 U. S. 344, 377 [26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362]; Morgan v. Devine, 237 U. S. 632 [35 Sup. Ct. 712, 59 L. Ed. 1153]. The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. Williamson v. United States, supra. And it is punishable as conspiracy, though the intended crime be accomplished. Heike v. United States, 227 U. S. 131, 144 [33 Sup. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128]. * * * There must be an overt act; but this need not be of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy. United States v. Holte, 236 U. S. 140, 144 [35 Sup. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281]; Joplin Mercantile Co. v. United States, 236 U. S. 531, 535, 536 [35 Sup. Ct. 291, 59 L. Ed. 705]."

See, also, Goldman v. United States, 245 U. S. 474, 477, 38 Sup. Ct. 166, 62 L. Ed. 410; Louie v. United States, 218 Fed. 36, 39, 134 C. C. A. 58 (C. C. A. 9).

[2] Certainly there was no inconsistency in alleging the offenses severally charged in the two indictments. Can it be, then, that failure of proof as respects the controlling issue under either indictment can operate to defeat both indictments? The verdict of not guilty under the first and that of guilty under the second naturally signify that conspiracy was not proved under the former, but that fraud was proved under the latter. This derives special emphasis from the rule, just pointed out, that an effective overt act may be committed by one or more less than the entire number of those entering into a conspiracy, and need not constitute the very crime that is the object of the conspiracy, and indeed need not be of itself a criminal act. It results that the offense of which defendants were found guilty was

not the same offense as the one of which they were found not guilty. This, it is true, is but another way of stating, as we have already stated, that distinct offenses were charged in the two indictments.

[3] One of the grounds set up in the motion non obstante is that to support the charges of the second indictment, 800, the government "relied mainly upon evidence concerning acts and facts which are specifically set out and described as overt acts" in the first indictment, 798. This was in effect a plea of autrefois acquit. Such a plea, however, is unavailing unless the offense presently charged is precisely the same in law and fact as the former one relied on under the plea; thus, as Mr. Justice Harlan said (Burton v. United States, 202 U. S. 344, 380, 26 Sup. Ct. 688, 698 (50 L. Ed. 1057, 6 Ann. Cas. 362), in adopting language of Chief Justice Shaw, it must appear that the offense charged "was the same in law and in fact. The plea will be vicious, if the offenses charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact." Some of the facts leading up to the application there made of this rule are helpful. The point was presented (202 U. S. 377, 26 Sup. Ct. 697, 50 L. Ed. 1057, 6 Ann. Cas. 362) whether defendant could "legally be indicted for two separate offenses, one for agreeing to receive compensation in violation of the statute, and the other for receiving such compensation." In sustaining the view that these were separate offenses Mr. Justice Harlan said (Id.):

"There might be an agreement to receive compensation for services to be rendered without any compensation ever being in fact made, and yet that agreement would be covered by the statute as an offense; or compensation might be received for the forbidden services without any previous agreement, and yet the statute would be violated."

Defendant also invoked protection under the clause of the Constitution which declares that no person "shall be subject for the same offense to be twice put in jeopardy of life or limb." The first and second counts of an indictment in a former case charged that defendant had unlawfully accepted and received certain money from a company for services rendered in its behalf in a matter before the Post Office Department in which the United States was interested; while the third count of that indictment charged defendant with having unlawfully received this money from Mahaney, an officer of the company, as compensation for the services so rendered. Defendant was convicted on the first and second counts and acquitted on the third count. Defendant pleaded this acquittal in bar of the prosecution based on the third and seventh counts of the last indictment. In its answer to this plea the government alleged that, while the third and seventh counts of the present indictment were identical in legal effect with counts 1 and 2 of the first indictment, the offense charged in counts 3 and 7 of the last one was "not identical in legal effect with said count 3 of said original indictment." Demurrer to this answer was overruled in the court below, and in sustaining such ruling Mr. Justice Harlan, speaking for the court, said (202 U. S. 379, 26 Sup. Ct. 698, 50 L. Ed. 1057, 6 Ann. Cas. 362):

"It was not alleged in the former indictment that Mahaney paid the money to the defendant in behalf of or by direction of the company. This distinc-

tion was·manifestly in the mind of the jury in the former case; for, while they found the defendant guilty of having received forbidden compensation from the company, they found him not guilty of having received such compensation from Mahaney."

And it was to this distinction· that the rule before mentioned as laid down by Chief Justice Shaw .was applied. The distinction thus pointed out and the application of the rule touching former jeopardy are plainly applicable to the instant case.

In Morgan v. Devine, 237 U. S. 632, 35 Sup. Ct. 712, 59 L. Ed. 1153, the court had occasion to consider the rule against double jeopardy under petition of habeas corpus. Devine and another had pleaded guilty to an indictment containing two counts, one under section 192 of the Penal Code (Comp. St. § 10362), for unlawfully breaking into a post office with intent to commit larceny, and the other under section 190 (section 10360), for committing the larceny. Devine was sentenced for 4 years on the first count and 2 years on the second; the sentence being "cumulative and not concurrent." The other appellee was likewise sentenced for 3½ years' imprisonment and a fine of $100 on the first and 2 years on the second count. The object of seeking the writ was to be discharged from confinement at the expiration of the sentences under the first count, and the writ was granted below. Appellees claimed protection against double jeopardy forbidden by the Fifth Amendment, because the several things charged in the two counts were done at the same time and as part of the same transaction. In reversing the judgment of the District Court Mr. Justice Day said (237 U. S. 641, 35 Sup. Ct. 715, 59 L. Ed. 1153):

"As to the contention of double jeopardy upon which the petition of habeas corpus is rested in this case, this court has settled that the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes. Without repeating the discussion, we need but refer to Carter v. McClaughry, 183 U. S. 365 [22 Sup. Ct. 181, 46 L. Ed. 236]; Burton v. United States, 202 U. S. 344. 377 [26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362], and the recent case of Gavieres v. United States, 220 U. S. 338 [31 Sup. Ct. 421, 55 L. Ed. 489]."

Upon the question whether Congress had created two distinct offenses in sections 190 and 192 of the Criminal Code, the court quoted section 1062 and the second paragraph of section 1052 of Bishop on Criminal Law; and counsel for the present defendants, relying on this as an approval of Mr. Bishop's view, make paragraph 2 of section 1052 (volume 1, 8th Ed., p. 630) the foundation for their claim of fatal inconsistency between the present verdicts. The test as there stated by Mr. Bishop is to the effect that, where two indictments have been returned, if there could have been a conviction under the first upon proof of what is set out in the second, the second indictment cannot be maintained; otherwise, it can be. We do not see that this differs materially from the rule laid down in Morgan v. Devine and just quoted; but it is to be observed,. of the alternatives stated in Mr. Bishop's rule, the one adopted in Devine's Case concerning two closely related offenses is opposed to counsel's present contention.

Counsel strenuously insist that, unless the present defendants acted in concert so as to constitute the offense of conspiracy charged in the first indictment, it was "not possible" for them to commit any of the frauds alleged in the second indictment. The most obvious answer to this is to be found in the verdicts themselves, if upon the evidence they are sustainable; if they show anything, it is that what is claimed to have been "not possible" actually happened. The same insistence was made for defendants on their motion for new trial. This was met in several ways by the learned trial judge. One was that, if the point was well taken, it would follow "that a conviction on a fraud count laid against two or more persons under section 17 of the Oleomargarine Act (Comp. St. § 6229) cannot be sustained unless it be accompanied by averments of a conspiracy"—calling attention to decisions of this court (Hart v. United States, 183 Fed. 368, 105 C. C. A. 588, and Hardesty v. United States, 168 Fed. 25, 27, 93 C. C. A. 417, and also Enders v. United States, 187 Fed. 754, 109 C. C. A. 502 [C. C. A. 7]), where a plurality of persons had in each case been jointly indicted and convicted of frauds committed in violation of section 17 of the Oleomargarine Act, and the judgments were affirmed, although, as the District Judge, said, in none of the cases "did the fraud counts hint at a conspiracy."

Counsel say in their brief that the use so made of these decisions shows that the principle upon which they rested their contention of inconsistency was misunderstood, and that they did not intend to assert that a fraud count could not be laid against two or more persons under section 17 of the Oleomargarine Act without "being accompanied by averment of conspiracy." Thus the contention of inconsistency is reducible to a question of fact, whether in this particular instance the absence of a conspiracy rendered it impossible for defendants to commit the frauds charged in the second indictment. In its last analysis this question at once challenges the wisdom of the statutes and the power to enact them, since they punish a conspiracy to do an act independently of penalizing the act itself. The power to enact such legislation cannot be questioned (Clune v. United States, 159 U. S. 590, 595, 16 Sup. Ct. 125, 40 L. Ed. 269), and if the assertion of an impossibility of two or more persons to do a particular thing without first agreeing to do it could prevail, the law might readily be frustrated.

The true test of this question is to be found in the instant case, not only in the verdicts, but also in the very rule counsel rely on; for it must be remembered that the gist of the offense charged in the first indictment was the formation of a conspiracy in violation of section 37 of the Criminal Code (35 Stat. 1095), while the substantive frauds charged in the second indictment were direct violations of the Oleomargarine Act. 24 Stat. 209, and as amended in 32 Stat. 194, c. 784, § 8. It therefore needs only to be stated, in view of the decisions before cited, as well as the rule of Mr. Bishop, that the evidence offered to prove the fraud counts of the second indictment was not of a character, certainly was not sufficient, to prove the conspiracy alleged in the first indictment. These distinct offenses can-

not be confused by the relation of evidence offered to show execution of the conspiracy alleged (not the conspiracy itself) to the evidence offered to show actual commission of the frauds charged in the other indictment. The contention of fatal inconsistency must therefore fail.[1]

We are the more content with this conclusion because of the consideration this court gave to a closely analogous question in Swepston v. United States, 251 Fed. 205, 209, 210, 163 C. C. A. 361, 365. Two cases had been brought and tried together before the District Judge upon petitions to attach for contempt. It was in substance charged in the petitions that respondents, sheriff and jailer, had conspired with one Dye, a prisoner, and had permitted and assisted him to escape from jail. In their answers the respondents denied both the alleged conspiracy and acts of permitting and assisting the prisoner to escape. It was found that the conspiracy alleged was not proved, but that the respondents in fact permitted and assisted the prisoner to escape, and judgment was rendered accordingly, and upon error the judgment was affirmed. In the course of the opinion it was said:

"True, the conspiracy alleged was not proved; though, as already stated, Judge Sater found both respondents guilty of 'permitting and assisting Dye to escape.' This finding was clearly permissible, regardless of the charge of conspiracy; the fact of permitting and assisting might well have existed, and under the evidence apparently did exist, apart from the alleged conspiracy."

[4] We have thus far assumed the legal sufficiency of indictment 800. It is claimed that defendants are not charged with having been engaged in the business of manufacturing oleomargarine within the meaning of section 17 of the act. The variations in averment, already pointed out, as to the capacities in which defendants acted had the effect in some of the counts—third, fourth, seventh, and eighth—of charging them individually as principals and in the language of the statute as manufacturers of oleomargarine. This was sufficient, certainly on the face of the counts (Hardesty v. United States, 168 Fed. 25, 26, 29, 93 C. C. A. 417 [C. C. A. 6]); and so with the second count, since defendants were also charged there individually as principals though as operating under the name of the company (United States v. Orr [D. C.] 233 Fed. 718, 720). Counsel's claim must there-

---

[1] It may be added that both conspiracy and fraud counts were set up in the indictment in United States v. Morse (C. C.) 161 Fed. 429, 431, which survived demurrer, except as to some of the fraud counts. The defendants were acquitted under the former and convicted under the latter and the judgment was affirmed. Morse v. United States, 174 Fed. 539, 555, 98 C. C. A. 321, 20 Ann. Cas. 938 (C. C. A. 2). Petition for writ of certiorari was denied. 215 U. S. 605, 30 Sup. Ct. 406, 54 L. Ed. 346. It is claimed for the government, and denied for lack of knowledge by opposing counsel, that the question urged here was presented in the petition for writ of certiorari. We are not disposed, and in view of the decisions we have pointed out it is not necessary, to rest this feature of the case upon the fact that the same question seems to have arisen though does not appear to have been passed on in the Morse Case. It may be observed moreover that the practice of introducing a conspiracy count into indictments of kindred character was criticised in Hart v. United States, 240 Fed. 911, 915, 153 C. C. A. 597 (C. C. A. 2), but it was, of course, recognized as a lawful practice.

fore come to this: That the remaining counts do not charge that defendants committed any act at all, except as representatives of the corporation, and that they could not have been individually engaged as principals in the business of manufacturing oleomargarine, or have committed any fraud, within the meaning of the statute; indeed, counsel rely on the decision in United States v. Orr (D. C.) 223 Fed. 222, 224, which was rendered prior to the decision in the case of that name before cited and seemingly part of the same case.

The difference between the Orr Cases, as the decision in the second one indicates (233 Fed. at page 720), is that the defendants in the first were charged in their several capacities as officers of a named corporation, while in the second they were charged individually as principals, but as carrying on the business in the name of the corporation. The counts passed on in those cases are not sufficiently disclosed safely to compare them with the present counts as respects the reason for reaching opposite conclusions in the cases. We cannot think the difference there pointed out is material in the instant case. All the counts alike are here aimed against the very same persons; each count opening with a direct charge against them individually and employing practically the same language to characterize their acts, except only that in the first, fifth, sixth and ninth counts defendants are alleged to have committed the acts "while engaged as officers, agents and employés" of the corporation. Thus in the counts last mentioned defendants are severally charged in a double capacity, individual and representative, while in the others they are charged only as individuals. The effect of the averment touching the dual character of defendants was to set out a violation of the oleomargarine act through defendants' intentional perversion of the Dairy Company's corporate powers. And it is a rule of the criminal law as well as the civil that corporate agencies cannot shield themselves behind the corporation, where they are the actual and efficient actors in committing a fraud or an offense. United States v. Winslow (D. C.) 195 Fed. 578, 581, by the late Circuit Judge Putnam; Wood v. United States, 204 Fed. 55, 57, 122 C. C. A. 369 (C. C. A. 4); United States v. MacAndrews & Forbes Co. (C. C.) 149 Fed. 823, 832, by Judge Hough; Crall & Ostrander's Case, 103 Va. 855, 859, 49 S. E. 638; Bank v. Trebein, 59 Ohio St. 316, syl. 1, 52 N. E. 834; Exploration Mercantile Co. v. Pacific H. & S. Co. (D. C.) 177 Fed. 825, approved at page 839, 101 C. C. A. 39 (C. C. A. 9). The principle intended to be applied finds expression in the language of Chief Justice Campbell who, in Hempfling v. Burr, 59 Mich. 294, 26 N. W. 496, had occasion to say of a bank cashier who sought to escape a charge of fraud on the theory that it had been committed in his official capacity (59 Mich. 295, 296, 26 N. W. 496):

"In such a case it is quite likely that Burr's conduct may have been official, but we are not aware of any principle which will exempt a person from personal responsibility for fraud committed in a double capacity."

[5] Further, considering the nature of the offenses here complained of, the acts charged against defendants in their dual capacities were such as would bind the corporation. New York Central R. R. v.

United States, 212 U. S. 481, 492, 495, 29 Sup. Ct. 304, 53 L. Ed. 613. If the corporation had been included with the present defendants in the indictment, as it clearly might have been under appropriate allegations (New York Central R. R. v. United States, supra), the legal sufficiency of the indictment would not in the present state of the law have been open to serious dispute, although defendants might in a technical sense have been regarded as aiders and abettors. Such is the necessary and adjudged effect of section 332 of the Penal Code:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." 35 Stat. pt. 1, p. 1152 (Comp. St. § 10506).

See Wood v. United States, 204 Fed. 55, 58, 122 C. C. A. 369 (C. C. A. 4); Dean v. United States, 246 Fed. 568, 574, 158 C. C. A. 538 (C. C. A. 5); Rooney v. United States, 203 Fed. 928, 931, 932, 122 C. C. A. 230 (C. C. A. 9); and see Ruthenberg v. United States, 245 U. S. 480, 483, 38 Sup. Ct. 168, 62 L. Ed. 414.

And where the statute, as here, has abrogated the distinction prevailing at the common law between principals and accessories in the commission of felonies, a charge against one formerly known as an accessory is good against him as principal. Rosencranz v. United States, 155 Fed. 38, 43, 83 C. C. A. 634 (C. C. A. 9). So, where persons were formerly chargeable as aiders and abettors, they may be indicted and prosecuted as principals, whether the principal offender has been indicted and acquitted (Rooney v. United States, supra), or has not been indicted at all (Wood v. United States, 204 Fed. supra, at page 58, 122 C. C. A. 369). This results, too, from the rule prevailing in some jurisdictions that under such modifying statutes the act of aiding and abetting is a substantive offense. Goins v. State, 46 Ohio St. 457, 462, 21 N. E. 476.[2]

It must follow from the foregoing considerations that the first, fifth, sixth, and ninth counts, as well as the others before passed upon, of indictment 800, are legally sufficient.

[6] 2. *Consolidation of the Two Indictments, One for Conspiracy and the Other for Substantive Fraud, Permissible.*—It is insisted that defendants were deprived of a fair trial by the order of consolidation. It is settled that section 1024, Rev. St. (Comp. St. § 1690), invests trial judges with discretionary power to require indictments charging one or more persons with different though connected acts or transactions of the same class of crimes or offenses to be consolidated for purposes of trial; this, of course, signifies a judicial discretion,

---

[2] Well-known rules and distinctions of the common law, which would otherwise be applicable here, have been modified by both federal and state legislation; and the state statutes, in connection with pertinent principles of the common law, have been frequently and exhaustively discussed by the courts of last resort in quite a number of the states. We may refer to the following: People v. Bliven, 112 N. Y. 79, 82, 19 N. E. 638, 8 Am. St. Rep. 701, et seq., by Judge (later Mr. Justice) Peckham; Vogel v. State, 138 Wis. 315, 330, 119 N. W. 190, et seq.; Spies v. People, 122 Ill. at page 242, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320, et seq.; People v. Outeveras, 48 Cal. 19, 21 to 26. And see Rosencranz v. United States, supra.

soundly exercised, and not the uniting of offenses which for that rea-son would confound and prejudice the defendants. Dolan v. United States, 133 Fed. 444, 446, 69 C. C. A. 274 (C. C. A. 8). Similar power exists independently of the statute. Logan v. United States, 144 U. S. 263, 296, 12 Sup. Ct. 617, 36 L. Ed. 429; Brown v. United States, 143 Fed. 60, 66, 67, 74 C. C. A. 214 (C. C. A. 8). The nature of the power, however, implies that it may be improvidently exercised, though, in view of Mr. Justice Gray's observation in Mutual Life Insurance Co. v. Hillmon, 145 U. S. at page 293, 12 Sup. Ct. 909, 36 L. Ed. 706, such instances must be exceedingly rare. This is not to be qualified by the ruling in McElroy v. United States, 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355, in view of differences in the indict-ments there pointed out (164 U. S. at page 79, 17 Sup. Ct. 31, 41 L. Ed. 355) and ruled upon (164 U. S. at page 81, 17 Sup. Ct. 31, 41 L. Ed. 355); and the features distinguishing that decision from the general rule received further attention in Williams v. United States, 168 U. S. 382, 390, 18 Sup. Ct. 92, 42 L. Ed. 509.

We have seen that the defendants in the instant case were included in both indictments, the one for alleged conspiracy and the other for fraud, and that the conspiracy alleged was to defraud the government of taxes like those of which it is alleged in the second indictment the government was actually defrauded. While distinct offenses were thus charged as before shown, it is evident that the indictments in-volved transactions of the same character, "transactions connected together," and "of the same class of crimes or offenses" within the meaning of section 1024 (Williams v. United States, supra, 168 U. S. at pages 390, 391, 18 Sup. Ct. 92, 42 L. Ed. 509); and in Emanuel v. United States, 196 Fed. 317, 320, 116 C. C. A. 137 (C. C. A. 2) it was held that where several defendants were included in each of several indictments, one charging conspiracy to commit substantive offenses and the others charging their actual commission, the indict-ments were rightly consolidated. True, upon the hearing of the in-stant motion to consolidate, counsel for the government expressed the belief in substance that no confusion would arise under the evidence offered in support of the respective indictments, certainly none that could not be cleared up by the court's instructions to the jury. The court expressed some misgiving, and in granting the order charged the government with the risk. On the motion for new trial, however, the trial judge believed that defendants had suffered no prejudice from the order, and in view of the record and of his presence at the trial it cannot be said that the order was not justified. Morse v. United States, 174 Fed. 539, 541, 98 C. C. A. 321 (C. C. A. 2), and petition for writ of certiorari denied, 215 U. S. 605, 30 Sup. Ct. 406, 54 L. Ed. 346; Gardes v. United States, 87 Fed. 172, 176, 30 C. C. A. 596 (C. C. A. 5); Lemon v. United States, 164 Fed. 953, 958, 90 C. C. A. 617 (C. C. A. 8).

3. *Rulings in Course of Trial.*—The assignments of error include rulings of the court (a) claimed to be inconsistent respecting admis-sion of testimony and purposes for which the jury might consider it, whereby defendants "were kept in ignorance of what evidence had

been admitted" against them respectively "and for what purpose"; (b) refusing before the government closed its case to pass on exhibits and testimony offered as to certain of the defendants and compelling them to proceed with their defense before announcing whether and for what purpose such evidence was admitted; and (c) admitting claimed improper evidence offered by the government, refusing to strike out claimed inadmissible and prejudicial evidence, and withdrawing admissible evidence introduced by defendants. The details of these assignments are made the subjects of elaborate arguments. It is not feasible, nor is it necessary, to pass on the matters separately, or to group them so as to show the reasons for all the rulings complained of, though they have all been considered.

We understand counsel's claim in respect of inconsistent rulings to mean, for instance, that evidence would be received either generally or conditionally, or for special purposes, and subsequently either changed in scope or ruled out, and that many of such rulings were unduly delayed. It is true that rulings of this character were made in a number of instances. Some took place before and some after all the evidence was closed, and others after the opening arguments to the jury had been concluded; but we do not see how defendants, through their counsel, could have failed to observe and follow either the evidence that was finally retained or the purposes to which it was to be applied. It might as well be said that evidence received without objection or withdrawal could not be remembered or otherwise made available for purposes of defense. So far as any discoverable effect of the course pursued in the instant case is concerned, the ultimate rulings made on questions of evidence must be the test of error; and it is quite as vain to assign error to the intermediate rulings as it is to expect that changes in rulings will not occur in the course of a long trial, involving many and complicated items of evidence. It is said, however, that the effect of reserving rulings here until after the government closed its case, and requiring defendants meanwhile to proceed with their defense, was to violate article 5 of the Amendments to the Federal Constitution, which article in substance forbids compelling a person in a criminal case to be a witness against himself or depriving him of the guaranty of due process of law. We are not impressed by this contention. It did not deprive defendants of opportunity through care of their own and their counsel to observe and separate the subjects of such deferred rulings from the rest of their defense. Moreover, as to the rulings made after the testimony for the defense was closed and before the arguments were begun, defendants' introduction of testimony on the subjects of such rulings was voluntary, and cannot be said to have been prejudicial for that reason. It was open to defendants to withhold their testimony in that behalf until the reserved questions were passed upon; and as to the rulings made at the close of the opening arguments we do not discover that any objection was made to proceeding with the arguments, though error is assigned touching this feature of the delayed rulings. Nor is it perceived how defendants were prejudiced by any of such reserved rulings, for these rulings came at times when their entire

effect could be more readily apprehended and applied by both counsel and jury.

[7] We may add that our consideration of the rulings in question convinces us that the trial judge studiously analyzed the subjects involved and carefully instructed and warned the jury as to the purposes for which the evidence was received. The endeavor was, as the judge states in one of his rulings on a question of evidence, "to withhold final ruling until the case was so developed" that he "understood it." The necessity and wisdom of such a course in a case like this must be apparent to every experienced lawyer. In a word, we think the efforts made to render the evidence intelligible to the jury met the requirements intended to be exacted by this court in the Hendrey Case, 233 Fed. at pages 17, 18, 147 C. C. A. 75, here relied on by the defendants. And it is not to be assumed in a criminal case, any more than in a civil case, that a jury cannot grasp the meaning of a court's instructions touching admissibility and purposes of evidence, even though a change in ruling in that behalf be involved. As Mr. Justice Harlan said in Pennsylvania Co. v. Roy, 102 U. S. 451, 459 (26 L. Ed. 141), when speaking of an error committed by a trial judge which he subsequently corrected through instructions given to the jury:

"The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval."

There are exceptional instances, of course, where improper testimony may be received and subsequently excluded or withdrawn without removing the effect produced by its admission (Hopt v. Utah, 120 U. S. 430, 438, 7 Sup. Ct. 614, 30 L. Ed. 708; Looker v. United States, 240 Fed. 932, 153 C. C. A. 618 [C. C. A. 2]); but as respects the claimed inconsistent rulings as also certain withdrawals complained of here we are not convinced that any such instance is shown.

Upon the contention that the government was permitted to offer improper evidence, and that the court refused to strike out inadmissible and prejudicial evidence and directed withdrawal of admissible evidence introduced by defendants, we need not dwell. It would serve no useful purpose to point out the items of evidence discussed by counsel in this contention. Our examination of these features of the case and of the arguments of learned counsel concerning them persuades us that the objections may safely be answered in the language of the court when passing upon a kindred situation in the Morse Case, supra (174 Fed. at pages 554, 555, 98 C. C. A. 321, 336 [C. C. A. 2]):

"In an unusually protracted trial, depending upon a wilderness of figures, and during which a vast number of complicated transactions were investigated, it is not unnatural that mistakes should have been made. Neither is it sur-

prising that judges removed from the excitement of the forum, who have time to examine the events of the trial as they appear when portrayed in cold type, should have discovered some rulings which may be open to criticism. But we are convinced that no prejudicial error was committed."

4. *General Charge and Defendants' Special Requests.*—Considering the general charge (as to indictment 800) in its entirety, we think it was as favorable to the defendants as the law justified. It is in all respects fair and is comprehensive; it bears the impress of careful study in connection with numerous reported decisions pointed out; it in substance covers each of the special requests made in behalf of defendants so far as such requests were in accord with our conception of the weight of authority. The complaints made of the general charge and of the refusals to grant special charges consist of verbal criticism, and challenge of matters lacking in prejudicial effect, rather than anything amounting to reversible error. This may be illustrated by counsel's criticism upon the language used in the general charge to define reasonable doubt. The language and the citations accompanying it show that this portion of the charge, while not identical with, is to all intents and purposes the same as, language employed for a like object in well-known cases of this circuit, by Circuit Judge (later Mr. Justice) Jackson in the Harper Case (C. C.) 33 Fed. 482 to 484, Judge Hammond in the Means Case (C. C.) 42 Fed. 606, 607, and Judge Taft in the Youtsey Case (C. C.) 91 Fed. 868, 869; and in further support reference was made to Griggs v. United States, 158 Fed. 572, 578, 85 C. C. A. 596, and citations (C. C. A. 9).

Again it is urged that the court erred in refusing specifically to instruct the jury that under the evidence Snevily, for example, was an accomplice, instead of leaving the fact to be found by the jury; also in failing properly to define what corroboration meant respecting his testimony, and also in confusing the jury with two different rules by which to measure such testimony. But the trial judge referred to and evidently followed rules laid down by Mr. Justice Day in Holmgren v. United States, 217 U. S. 523, 524, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, and by Judges Caldwell, Sanborn, and Thayer in Re Rowe, 77 Fed. 165, 166, 23 C. C. A. 103; and these decisions, as also the one in the Caminetti Case, since rendered (242 U. S. 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168), leave no room even for verbal criticism upon these features of the charge. We cannot think it necessary further to pursue the subject of the court's instructions.

[8] 5. *The Evidence.*—Motion to direct acquittal of each defendant was denied, as before pointed out. It is claimed that the evidence was not sufficient to show the commission of any of the frauds charged, nor to support the verdict against any of the defendants. It was for the jury to pass upon the facts; and it is for this court to determine whether there was evidence introduced which was proper to go to the jury and legally sufficient to sustain the verdicts.[3] It is not open

[3] Crumpton v. United States, 138 U. S. 361, 362, 11 Sup. Ct. 355, 34 L. Ed. 958; France v. United States, 164 U. S. 676, 681, 17 Sup. Ct. 219, 41 L. Ed. 595; Humes v. United States, 170 U. S. 210, 212, 213, 18 Sup. Ct. 602, 42 L. Ed.

to serious dispute that proper evidence was introduced to show that substantial portions of the oleomargarine product described in the fraud counts was artificially colored and removed at or about the times alleged and without payment of the prescribed tax; and, irrespective of the evidence restricted by the trial judge to the conspiracy count, we are satisfied from the record that proper evidence was ultimately received under the fraud counts in relation to the respective defendants which, if believed, was sufficient in law to support the several verdicts. This conclusion is strengthened by the fact that the trial judge, who had every opportunity to see and hear the witnesses and to become familiar with the circumstances disclosed at the trial, refused motions for new trial based in part upon the ground of insufficiency of evidence.

[9] 6. *Continuance Denied.*—Error is assigned to the refusal of the trial court to grant a motion supported by affidavits to continue the trial of the cause to the next succeeding term. This assignment has been earnestly supported both by brief and oral argument. The main ground of the motions was that immediately before the time fixed for trial of the cause many newspaper publications, purporting to relate in part to the facts involved in this cause and in part to the facts involved in other similar prosecutions, were circulated in the counties from which the jurors were to be drawn, and hence that defendants could not obtain a fair trial of the cause at the time fixed for the hearing. No sufficient showing is made that the opposing party, the government, instigated or brought about these publications. The question presented was after all one of judicial discretion and not subject to review, except where it is clearly shown that the discretion has been abused. Hardy v. United States, 186 U. S. 224, 22 Sup. Ct. 889, 46 L. Ed. 1137; Isaacs v. United States, 159 U. S. 487, 489, 16 Sup. Ct. 51, 40 L. Ed. 229; Holt v. United States, 218 U. S. 245, 248, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138. The trial judge and the counsel alike exercised a marked degree of care and caution in securing fair and unbiased jurors and the court in its general charge specially admonished and instructed the jury not to consider these publications; it therefore cannot rightfully be said either that the court abused its discretion or that defendants suffered prejudice through denial of the motion.

Judgment affirmed.

1011; Burton v. United States, supra, 202 U. S. 373, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Ling Su Fan v. United States, 218 U. S. 302, 308, 31 Sup. Ct. 21, 54 L. Ed. 1049, 30 L. R. A. (N. S.) 1176; Looker v. United States, supra, 240 Fed. 933, 153 C. C. A. 618 (C. C. A. 2); Tapack v. United States, 220 Fed. 445, 448, 137 C. C. A. 39 (C. C. A. 3); Hart v. United States, 84 Fed. 799, 803, 804, 28 C. C. A. 612 (C. C. A. 3); Dean v. United States, 246 Fed. 568, 572, 158 C. C. A. 538 (C. C. A. 5); Kellogg v. United States, 103 Fed. 200, 201, 43 C. C. A. 179 (C. C. A. 6); Hays v. United States, 231 Fed. 106, 108, 145 C. C. A. 294 (C. C. A. 8); Elder v. United States, 243 Fed. 84, 89, 155 C. C. A. 614 (C. C. A. 9); People v. Henssler, 48 Mich. 49, 51, 11 N. W. 804.